Daniel French v. Commissioner.
French v. Commissioner
Docket No. 6406-67.
United States Tax Court
T.C. Memo 1970-322; 1970 Tax Ct. Memo LEXIS 36; 29 T.C.M. (CCH) 1473; T.C.M. (RIA) 70322; November 23, 1970, Filed. Benjamin F. Kivnik, 711 Western Saving Fund Bldg., Philadelphia, Pa., for the petitioner. Mary Ann Hagan, for the respondent. IRWIN
Memorandum Findings of Fact and Opinion IRWIN, Judge: The Commissioner determined a deficiency *37 in the amount of $4,320.42 in petitioner's income tax for the calendar year 1964. Due to concessions made by the parties at trial and on brief, the issues remaining for consideration are: 1. Whether expenditures in the amount of $5,082.76 claimed by petitioner as entertainment expenses for the taxable year 1964 are deductible under sections 162 and 274 of the Internal Revenue Code of 1954; [1]
2. Whether lodging expenditures in the amount of $938.61 incurred during 1964 at Laurel, Md., are deductible as "away from home" expenses under section 162; 3. Whether expenditures in the amount of $890 claimed by petitioner for the year at issue as traveling expenses while "away 1474 from home" are deductible under sections 162 and 274; 4. Whether expenses in the amount of $336.60 for automobile repairs and $413 for automobile insurance are deductible in 1964 under sections 162 and 274; and 5. Whether respondent properly disallowed the $2,000 claimed by petitioner as automobile depreciation for 1964. Findings of Fact The parties stipulated *38 some facts and they, together with the exhibits attached thereto, are incorporated herein by this reference. Daniel French (hereinafter referred to as petitioner) timely filed an individual Federal income tax return for the calendar year 1964 with the district director of internal revenue at Phoenix, Ariz. At the time of the filing of the petition herein, he resided in Laurel, Md. Petitioner, who is single, was born on November 13, 1940, at College Point, New York, N. Y. He is a jockey by profession. His first professional race took place at Aqueduct in New York City on July 11, 1960. At that time, petitioner was a resident of New York, N. Y.
While petitioner was still in school and prior to the time that he began racing in New York, he had spent about one year in Arizona on his doctor's advice. During the years 1961 and 1962, petitioner worked as a jockey apprentice in Monkton, Md., for Frank Christmas At the time of the trial herein, petitioner was the owner of record of a three bedroom, ranch style house located in Phoenix, Ariz., for which he paid $17,500. The house was financed by a realty mortgage dated January 4, 1962, in the amount of $14,500. During the year at issue, *39 petitioner's mother lived in this house. Petitioner, who had some clothing and other personal belongings at the Phoenix address, actually spent only approximately one month there during 1964 because of the fact that he was racing on the East Coast in Maryland, Delaware, New Jersey, and New York. Petitioner did not race in Arizona or any other western state during the year in question. He had started his career in racing on the East Coast and had become successful there. At the time of the trial herein, petitioner still had not raced in Arizona, nor does it appear that he has raced in any other western state. Petitioner's whole life revolved around the racing world. At the time of the trial, his friends were all from the racing field and he knew many persons who had been involved in racing in the Maryland area for a considerable length of time. Petitioner's racing schedule for 1963 was substantially the same as his schedule for the year at issue. The following is petitioner's schedule for 1964, indicating the tracks at which he raced, the location of each track, and his place of abode during the period he spent at each racetrack: TRACK
LOCATION OF TRACK
DATES SPENT AT EACHTRACK
PLACE OF ABODE
Bowie
Bowie, Md.
1-17 to 3-21
Laurel, Md.
Laurel
Laurel, Md.
3-28 to 4-22
Laurel,md.
Garden State Park
Cherry Hill, N. J.
4-23 to 5-30
Cherry Hill, N. J.
Aqueduct
New York, N. Y.
6-1
West Long Branch, N. J.
Delaware Park
Stanton, Del.
6-4
West Long Branch, N. J.
Monmouth Park
Oceanport, N. J.
6-5 to 7-6
West Long Branch, N. J.
Aqueduct
New York, N. Y.
7-7
West Long Branch, N. J.
Monmouth Park
Oceanport, N. J.
7-8 to 8-8
West Long Branch, N. J.
Atlantic City
Pleasantville, N. J.
8-10 to 10-10
Pleasantville, N. J.
Garden State Park
Cherry Hill, N. J.
10-20
Cherry Hill, N. J.
Laurel
Laurel, Md.
10-21 to 11-12
Laurel, Md.
Pimlico
Baltimore, Md.
11-13 to 12-4
Laurel, Md.
Aqueduct
New York, N. Y.
12-5
Laurel,md.
Pimlico
Baltimore, Md.
12-6 to 12-15
Laurel, Md.
*40 The following is a table of distances between various cities from and to which petitioner traveled during 1964: From
To
Number ofMiles
Bowie, Md.
Laurel, Md.
8
Laurel, Md.
Cherry Hill, N. J
123
Cherry Hill, N. J.
New York, N. Y.
87
New York, N. Y.
Oceanport, N. J.
48
Oceanport, N. J.
Atlantic City, N. J.
80
Atlantic City, N. J.
Cherry Hill, N. J.
62
Laurel, Md.
New York, N. Y.
226
Bowie, Md.
Baltimore, Md.
15
Laurel, Md.
Baltimore, Md.
12
Laurel, Md.
Phoenix, Ariz.
2,277
New York, N. Y.
Stanton, Del.
135
Stanton, Del.
Oceanport, N. J.
104
Baltimore, Md.
New York, N. Y.
199 1475 The parties have stipulated that petitioner's total lodging [2] expenditures in 1964 were in the amount of $2,473.45. Of this total amount, the expenses incurred at Laurel, Md., viz. $938.61, are at issue, the respondent having conceded the deductibility of the remaining lodging expenses. *41 Petitioner did not keep a diary or detailed ledger of his alleged $5,082.76 in entertainment expenses; nor did he produce any documentary evidence supporting these claimed expenses. Petitioner purchased a 1963 Buick Riviera in April 1963 for $4,800. He also owned a 1961 Volkswagen. However, he drove only the Biick while he was working and living on the East Coast; the Volkswagen remained in Phoenix. Petitioner deducted the following amounts with respect to the Buick on his Federal income tax return for 1964: Amount
Claimed Basis for Deduction
$ 890.00
Gas and oil
2,000.00
Depreciation [3]
413.00
Insurance
485.70
Repairs and maintenance
The parties have stipulated that the amount for auto repairs should be reduced to $336.60. Petitioner did not keep any records of the total mileage on the Buick in 1964. He arrived at a figure of 33,000 miles driven in that year by reading the speedometer at the end of the year. Based upon this speedometer reading, petitioner's accountant estimated that petitioner incurred $890 in gas and oil expenses in 1964. Petitioner filed a Maryland state resident income *42 tax return for 1963, and a Maryland nonresident return for 1964. He did not file an Arizona state income tax return as a resident or nonresident for calendar or fiscal years 1963 through 1967. Opinion Petitioner deducted on his tax return for 1964 $5,082.76 as entertainment expenses, $4,470.14 as traveling expenses (including amounts expended for lodging), and $2,000 as automobile depreciation. Respondent disallowed these deductions in their entirety; however, due to certain concessions made by the parties at trial and on brief, the amounts of some of the deductions which are in issue have been reduced. At the outset, we note that the deductibility of the various expenses involved herein is essentially a question of fact, Commissioner v. Heininger, 320 U.S. 467 (1943), Harry G. LaForge, 53 T.C. 41 (1969); and the burden of proof is on petitioner, Harry G. LaForge, supra.
1. Entertainment Expenses Respondent contends that petitioner has failed to prove that the claimed $5,082.76 in entertainment expenses were ordinary and necessary business expenses under section 162, [4] and, furthermore, that petitioner has not substantiated these *43 alleged expenditures in accord with the strict requirements of section 274. [5]
*44 Despite respondent's position in his notice of deficiency, his answer to the petition, his opening remarks and his briefs that petitioner had failed to prove that the entertainment expenses were ordinary and necessary, petitioner stated on brief the following: 1476 The Respondent does not appear to deny that the entertainment expenses were directly related to the business of taxpayer. Rather, the deduction is contested because of the claimed lack of substantiation under section 274(d) IRC.
While it is clear that the requirement for substantiation in section 274(d), and the accompanying regulations, [6] is an overriding requirement, it is equally clear that claimed business expenses must otherwise be deductible in the first instance under section 162. *45 We cannot understand petitioner's failure to acknowledge respondent's basic position on the deductibility of the expenditures in question. However, we feel this will not be a detriment to him since we hold that, in any event, he did not meet the substantiation requirements. With respect to the manner in which petitioner recorded his entertainment expenses, he testified: What I would do, I would cash a check made payable to cash and sign it on the bottom for the purpose of what I was using it for and then I would cash the check and use that for dining. Despite this testimony, no such checks were introduced into evidence. Furthermore, petitioner kept no diary or detailed ledger of any type relating to these expenses. He admitted at trial that he could not give a "breakdown by date and time or place of the amounts deducted for entertainment." Although he listed some names, he could not recall names of many of the persons he entertained because, as he stated: Names. I couldn't recall names. A lot of people I come across every day, a lot of people I'm around every day. There's a lot of owners and trainers on the race track. It's not easy to remember them all. It is clear that *46 petitioner has not met the substantiation requirements of section 274(d) and the regulations therunder which have been held valid by this Court. William F. Sanford, 50 T.C. 822 (1968), affd. per curiam 412 F. 2d 201 (C.A. 2, 1969), certiorari denied 396 U.S. 841 (1969). Section 274(d) was designed to insure that no deduction for entertainment and other specified expenses is allowed solely on the basis of the taxpayer's own unsupported self-serving testimony. H. Rept. No. 1447, 87th Cong., 2d Sess., 1962-63 C.B. 405, 427; 1477 S. Rept. No. 1881, 87th Cong., 2d Sess., 1962-3 C.B. 707, 741. In the case of entertainment expenditures of $25 or more, documentary evidence is required to support a deduction therefor. Section 1.274-5(c)(2)(iii), Income Tax Regs. Moreover, the taxpayer must maintain an account book, diary, statement of expense or similar record. Section 1.274-5(c)(2)(i). These two, in combination, are sufficient to establish each element required for substantiation under section 274(d). Documentary evidence is not, however, required to support entertainment expenditures *47 of less than $25. This is not to say, as petitioner contends, that the stringent and detailed records required by the regulations under section 274(d) do not apply to expenditures under $25. Sections 1.274-5(c) (1) and (2) of the regulations still require that the taxpayer maintain an account book, diary, statement of expense or similar record, or that he present sufficient evidence corroborating his own statement. Petitioner has done neither. Therefore, it is clear from the record before us that petitioner has not satisfied the substantiation requirements for expenditures of $25 or more, nor for expenditures of less than $25. Accordingly, the claimed entertainment expense deduction of $5,082.76 was properly disallowed. See Harry G. LaForge, supra; Wm. Andress, Jr., 51 T.C. 863 (1969), affd. 423 F. 2d 679 (C.A. 5, 1970); John L. Ashby, 50 T.C. 409 (1968); Robert H. Alter, 50 T.C. 833 (1968); William F. Sanford, supra.
2. Lodging Expenses In order to be entitled to a deduction for lodging expenses under *48 section 162(a)(2) petitioner must prove: (1) the expenses incurred were reasonable and necessary; (2) the expenses were incurred while "away from home"; and (3) the expenses were incurred in pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465 (1946). It appears that respondent has conceded the issue of substantiation with respect to $938.61 [7] in lodging expenses incurred by petitioner in Laurel. The basis for the disallowance of this deduction has been narrowed by respondent to the following: Petitioner's tax home for the year 1964 was in Laurel, Maryland, and, therefore, lodging expenditures incurred at Laurel are not traveling expenses incurred while away from home within the meaning of section 162(a)(2) * * *. Petitioner, on the other hand, contends that his "home" for tax purposes was Phoenix, Ariz., where he purchased *49 a house, and that, therefore, his lodging expenses in Laurel were incurred "away from home." We agree with respondent on this issue. We note first that the record was not at all satisfactory as to certain facts which we feel are important to the resolution of this issue. It was never adduced at trial exactly how much money petitioner expended to maintain the house he owned in Phoenix, Ariz. Nor do we know specifically what personal effects he kept there. Petitioner testified as follows: Q. Do you have clothes at that residence? A. Yes, I do. Q. Do you have any other belongings there? A. Yes. This testimony is far more elusive than elucidating. Furthermore, we do not know whether petitioner maintained any bank or store accounts in Phoenix nor whether he was registered to vote there. We do know that he did not file an Arizona state income tax return as a resident or nonresident for calendar or fiscal years 1963 through 1967, that he spent only about four weeks there in 1964, and that he was never employed there. An examination of the entire record leads us to conclude that petitioner's connections with Phoenix were more tenuous than real, and accordingly, we hold that *50 Phoenix was not his home in any sense of the word in 1964. See Carmen Chimento, 52 T.C. 1067 (1969). Assuming arguendo that Phoenix was petitioner's home in the ordinary and usual sense of the word, this finding would not trigger the allowance of all traveling expenses incurred while away from Phoenix. The objective of section 162(a)(2), commonly known as the "away from home" provision, is to mitigate the burden of a taxpayer who must incur certain traveling expenses because of the exigencies of 1478 business. Ronald D. Kroll, 49 T.C. 557, 562 (1968). A fundamental question in determining whether a particular expense is dictated by the exigencies of business is "whether it would be reasonable to expect the particular taxpayer to move his home nearer to the place where he is working." Wright v. Hartsell, 305 F. 2d 221, 225 (C.A. 9, 1962). See also Ronald D. Kroll, supra.
In the situation where a taxpayer has a permanent place of employment, it is reasonable to expect him to move his residence to that vicinity. If he does not *51 so choose, the additional expenses resulting therefrom are the consequence of his personal desires and are not due to business needs. Ronald D. Kroll, supra. On the other hand, it is not reasonable to expect a taxpayer to move his residence to the situs of a temporary work assignment. See Peurifoy v. Commissioner, 358 U.S. 59 (1958); E. G. Leach, 12 T.C. 20 (1949). Therefore, living expenses incurred at the temporary post of business are deductible since they are incurred in pursuit of business rather than as a result of personal choice. Ronald D. Kroll, supra; Leo M. Verner, 39 T.C. 749 (1963). However, we must be careful lest we be led down the primrose path with respect to the temporary employment exception which has been engrafted onto the tax home doctrine. The question whether a taxpayer's employment is temporary entails a factual determination. Leo M. Verner, supra. However, a determination that a taxpayer's business is "the sort of employment in which termination within a short period [of time] *52 could be foreseen," Beatrice H. Albert, 13 T.C. 129, 131 (1949), does not necessarily warrant the deductibility of expenses incurred at such a "temporary" post. The basic issue is the point at which temporary employment becomes substantial, indefinite, indeterminate, or permanent. Although this is not always easily decipherable, it is precisely at that time that the situs of the temporary employment becomes a taxpayer's home within section 162(a)(2). Leo M. Verner, supra. Turning to the case before us, one might hastily conclude that because of the very nature of a jockey's work, his place of employment is temporary and, therefore, his residence in the usual sense of the word remains his home for tax purposes. See Hollie T. Dean, 54 T.C. 663 (1970). However, as to the petitioner before us, the facts elicited at trial lead us to conclude that Laurel, Md., was more than a temporary situs of employment for him. First of all, it is important to remember that petitioner first started racing in July 1960 at Aqueduct in New York City. Almost immediately thereafter, during the years 1961 and 1962, he worked as a jockey apprentice in Monkton, *53 Md.
Moreover, petitioner's racing schedule for 1963 was substantially the same as his schedule for 1964, the year at issue, which means that he raced at Laurel, Bowie and Pimlico racetracks (each track being within a 15-mile radius of the others) for a period of approximately five months each year. During this period, he resided in Laurel. Petitioner stated at trial that his friends were all from the racing field and that he had known for a considerable length of time many persons who were involved in racing in the Maryland area. Although petitioner did not have, so far as we know, any formal contracts of employment with any trainers or owners who entered horses at the Maryland tracks in question, nevertheless he was successful there and could reasonably foresee that his pattern of racing at those tracks would continue for an indefinite or indeterminate number of racing seasons. In this sense, we can say that petitioner's employment in the vicinity of Laurel was seasonal and recurring annually. Petitioner testified that he bought the house in Phoenix because he intended to ride out there. However, he also admitted that the Arizona climate was beneficial to his mother's health, *54 as well as to his own. Although petitioner claimed that he "couldn't get started out there" in Arizona, we remain ignorant as to the precise nature of the efforts, if any, petitioner made to pursue his career as a jockey in Arizona or any other western state. Moreover, petitioner testified that he knew he could not earn as much money in Arizona because race tracks operate only four days a week there. Petitioner did not race in Arizona or any other western state during 1964. Furthermore, at the time of the trial herein, petitioner still had not raced in Arizona. It 1479 also appears that, as of January 1969, he had never raced in any other western state. For the benefit of those who may feel we are adopting a hindsight test, we shall add the following comments. Petitioner established substantial connections with the racing world in and around Laurel, Md. He had established a pattern of racing there over a period of four years, from the time he began his jockey apprenticeship in 1961 through 1964, the year in question. We feel there is a point in time at which hindsight meshes with foresight and in fact becomes foresight. We are convinced that that stage has been reached in the *55 case before us. It would be entirely reasonable to expect petitioner to move his residence to the vicinity of Laurel, Md., where he could foresee he would be working during subsequent racing seasons. Petitioner's selection of a residence at a place which was not near any of his claimed places of employment was unreasonable. See Dyer v. Bookwalter, 230 F. Supp. 521 (W.D. Mo. 1964). One further note is in order. We are mindful that respondent has conceded the deductibility of all lodging expenses incurred away from Laurel and, therefore, we do not feel it appropriate to disturb that concession. Accordingly, we hold petitioner's tax home for 1964 was Laurel, Md. [8]
*56 3. Automobile Expenses Petitioner deducted $890 in gas and oil expenses, $413 in car insurance expenses, $485.70 [9] in automobile repair expenses, and $2,000 for auto depreciation on his 1964 income tax return with respect to his 1963 Buick. Respondent disallowed in full these deductions. Because of his failure to comply with the substantiation requirements of section 274(d) and the regulations thereunder (see footnotes 5 and 6), we must sustain respondent's disallowance of these deductions, except as noted, infra. As to the manner in which he arrived at a figure of $890 in gas and oil expenses, petitioner testified: When I had my income tax made out I told the accountant that I drove 33,000 miles and I didn't exactly - or I didn't have any idea how much I had spent for oil and gas and I guess he arrived at it through the figures of 33,000 miles. He figured it out. The figure of 33,000 miles was determined from a speedometer reading at the end of the year. At first, petitioner testified that the 33,000 miles *57 represented travel from track to track. However, he later admitted some personal use and estimated that his personal use totaled three or four thousand miles. We cannot accept these approximations as sustaining petitioner's deduction with respect to the business use of the Buick in 1964. Section 274(d). We also cannot resort to the simplified method for computation of deductible costs per mile of operating a car for business purposes, as set forth in Rev. Proc. 64-10, 1964-1 C.B. (Part 1) 667, because that ruling specifically provides as follows: To make use of this method of computing automobile cost, [an] * * * individual * * * is required to establish his business mileage * * * for * * * travel, in accordance with regulations section 1.274-5. Petitioner made no attempt whatsoever to comply with those regulations. The only way which we could arrive at the total business mileage driven by petitioner in 1964 would be to take petitioner's vague and general testimony at face value and 1480 accept his approximations. We do not feel that this procedure would be in accord *58 with the thrust of section 274(d). However, the parties did stipulate petitioner's racing schedule for 1964, as well as the distances from track to track. An examination of the table of distances, coupled with the knowledge that petitioner drove to the racing sites, discloses that petitioner's business mileage while away from Laurel totaled a minimum of 1,262 miles. Accordingly, we hold that he is entitled to deduct $126.20 (1,262 miles X 10 cents) in transportation expenses. Rev. Proc. 64-10, 1964-1 C.B. (Part 1) 667. The disallowance of the remaining claimed gas and oil expenses is sustained. Section 274(d). We also sustain respondent as to the remaining auto-related deductions because, not knowing how much of the use of the Buick in 1964 was for business purposes, we have no way of reasonably allocating a proportion of the expense of insurance and of depreciation to business purposes. [10] To reflect the concessions made by the parties and the *59 conclusions reached herein, Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Although expenditures incurred while away from home for meals may be deductible under section 162 (a) (2)↩, it appears that only "lodging" expenses are at issue in this case since the parties referred only to "lodging" expenditures at trial and on brief, as did the notice of deficiency.
3. Salvage value was computed by petitioner as $800.↩
4. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business * * *. ↩
5. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. * * * (d) Substantiation Required. - No deduction shall be allowed - (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home). (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, * * * unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense * * *, (B) the time and place of the travel, entertainment, * * * (C) the business purpose of the expense * * *, and (D) the business relationship to the taxpayer of persons entertained * * *. The Secretary or his delegate may be regulations provide that some of all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.↩
6. § 1.274-5. Substantiation requirements. (a) In general. No deduction shall be allowed for any expenditure with respect to - (1) Traveling away from home (including meals and lodging) deductible under section 162 or 212, (2) Any activity which is of a type generally considered to constitute entertainment, * * * * * * unless the taxpayer substantiates such expenditure as provided in paragraph (c) of this section. This limitation supersedes with respect to any such expenditure the doctrine of Cohan v. Commissioner (C.C.A. 2d, 1930) [2 USTC 489] 39 F. 2d 540. * * * Section 274(d) contemplates that no deduction shall be allowed a taxpayer for such expenditures on the basis of * * * approximations or unsupported testimony of the taxpayer. * * * (b) Elements of an expenditure - (1) In general. Section 274(d) and this section contemplate that no deduction shall be allowed for any expenditure for travel, entertainment, * * * unless the taxpayer substantiates the following elements for each such expenditure: (i) Amount; (ii) Time and place of travel or entertainment * * *; (iii) Business purpose; and (iv) Business relationship to the taxpayer of each person entertained, * * * * * * (c) Rules for substantiation - (1) In general. A taxpayer must substantiate each element of an expenditure (described in paragraph (b) of this section) by adequate records or by sufficient evidence corroborating his own statement except as otherwise provided in this section. * * * (2) Substantiation by adequate records - (i) In general. To meet the "adequate records" requirements of section 274(d), a taxpayer shall maintain an account book, diary, statement of expense or similar record (as provided in subdivision (ii) of this subparagraph) and documentalry evidence (as provided in subdivision (iii) of this subparagraph) which, in combination, are sufficient to establish each element of an expenditure specified in paragraph (b) of this section. * * * (iii) Documentary evidence. Documentary evidence, such as receipts, paid bills, or similar evidence sufficient to support an expenditure shall be required for - (a) Any expenditure for lodging while [traveling] away from home, and (b) Any other expenditure of $25 or more, except, for transportation charges, documentary evidence will not be required if not readily available, provided, however, that the Commissioner, in his discretion, may prescribe rules waiving such requirements in circumstances where he determines it is impracticable for such documentary evidence to be required. Ordinarily, documentary evidence will be considered adequate to support an expenditure if it includes sufficient information to establish the amount, date, place, and the essential character of the expenditure. * * * [A] cancelled check drawn payable to a named payee would not by itself support a business expenditure without other evidence showing that the check was used for a certain business purpose.↩
7. The parties stipulated that petitioner's total lodging expenditures in 1964 were $2,473.45. This includes $938.61 of such expenses incurred at Laurel, Md., which are at issue herein since respondent alleges that Laurel is petitioner's tax home. Respondent conceded the deductibility of the remaining lodging expenses.↩
8. We need not pass on the location of petitioner's tax home if he had established a bona fide residence at one of the other sites at which he raced during 1964. Furthermore, this case is factually distinguishable from the following cases where courts have allowed deductions for lodging and food expenses incurred away from the taxpayer's residence. In these cases there was some work or history of work performed in the vicinity of the taxpayer's residence. Alois Joseph Weidekamp, 29 T.C. 16 (1957) (parimutuel calculator); Curtis Leon Ralston, T.C. Memo. 1968-248 (exercise jockey); Nat Glogowski, T.C. Memo. 1967-236 (racetrack auditor); Pierce v. United States, 271 F. Supp. 165 (W.D. Ark. 1967) (racetrack steward). Although the taxpayers in Patricia A. Ruby Hall, T.C. Memo. 1964-157; Judy L. Gooderham, T.C. Memo. 1964-158↩, who were professional ice skaters for the Ice Follies, were allowed deductions for food and lodging expenses while away from their home towns, these cases are distinguishable in that the employment contracts for these taxpayers specifically provided that each employee-taxpayer's home city was the "point of engagement" and that the employer would pay for the employee's rail transportation from the point of engagement, the home city, to the place where the ice show opens and back to the home city when the show closes.
9. Petitioner deducted $485.70 on his tax return, but the petitioner conceded that $336.60 was the total amount of automobile repair expenses incurred in 1964.↩
10. The $126.20 deduction is in lieu of all operating and fixed costs of the car allocable to business purposes, such as oil, repairs, license tags, insurance, and depreciation. Rev. Proc. 64-10↩, supra.