LEO M. VERNER AND ERMA J. VERNER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86998.   Filed February 11, 1963.

*Leo M. Verner*, pro se.
*William T. Ivey, Jr., Esq.*, for the respondent.

FORRESTER, *Judge:* The respondent has determined the following deficiencies in petitioners' income tax:

| Year | Deficiency |
|---|---|
| 1955 | $342.65 |
| 1956 | 490.90 |
| 1957 | 468.48 |

The sole issue is whether amounts received as "per diem" allowances constitute reimbusement for traveling expenses while "away from home" within the meaning of sections 62(2)(B) and 162(a)(2).[1]

### FINDINGS OF FACT.

Some of the facts have been stipulated and are so found.

Petitioners were husband and wife at all times material hereto. They filed joint income tax returns for the calendar years 1955, 1956,

---
[1] All statutory references are to the Internal Revenue Code of 1954.

and 1957 with the district director of internal revenue at Los Angeles, Calif. Petitioner Erma J. Verner (hereinafter referred to as Erma) is a party to this proceeding solely by virtue of the filing of the joint returns. Petitioner Leo M. Verner will hereinafter be referred to as the petitioner.

On October 5, 1954, petitioner entered into the employ of the Douglas Aircraft Co. (hereinafter referred to as Douglas), department 862. Said department was responsible for testing new Douglas products and it had its headquarters at Santa Monica, Calif. Petitioner was advised that he would be subject to transfer for as long as he remained with the department, and he agreed to this condition of employment.

Petitioner's duties involved attaching and controlling various instruments for the testing of performance factors of experimental airplanes. Said instruments were removed after the airplane had completed the testing process.

On October 6, 1954, the day after petitioner was hired, he received orders to work on the testing instrumentation of a new military aircraft at Long Beach, Calif. During this period he lived with his family (his wife and their three children) in a rented dwelling in Ontario, Calif., which is 44 miles from Long Beach and 65 or 70 miles from Santa Monica. Approximately 6 months later, the aircraft was transferred to Edwards Air Force Base (hereinafter referred to as Edwards). Petitioner was immediately transferred to Edwards and he arrived there on April 5, 1955.

This aircraft was scheduled to be transferred to Florida for a freeze hangar test within 3 months of its arrival at Edwards and thereafter to proceed to Alaska. Petitioner originally believed that he would follow the plane to both places, but 2 weeks before it was taken to Florida, United States Government employees replaced the Douglas employees, and petitioner was assigned to work on another plane to be based at Edwards.

Pursuant to a formal company transfer order, petitioner went to Long Beach for approximately 4 hours in order to prepare this second aircraft for flight to Edwards. The plane and petitioner then returned to Edwards and petitioner worked on said plane for approximately 3 months at Edwards. After the second plane departed from Edwards, petitioner was shifted to still another Edwards-based aircraft. He took another 4-hour trip, this time to El Segundo, Calif., to prepare this aircraft for flight to Edwards. He then worked on this plane at Edwards for an unspecified period. After this plane crashed, petitioner was shifted to another Edwards-based aircraft. This process continued until 1960, well beyond the period in issue. Petitioner's duties were essentially the same regarding each of the various aircraft on which he worked.

At no time during the period April 5, 1955 to 1960, did petitioner leave the Edwards vicinity for more than a few hours or days. He went to Santa Monica and Long Beach to receive some company school instruction during 1955, but many of the classes were held at Edwards. On two occasions he stayed overnight at Santa Monica with regard to the schooling, and on these two occasions he was not paid the per diem allowance. During the approximate 5 years petitioner was at Edwards, he made plans to store his furniture on four separate occasions pursuant to Douglas transfer orders, but on each occasion the orders were changed and he remained at Edwards. He once went to Long Beach with the understanding that he would stay for 6 weeks, but he remained there for only a few hours.

Petitioner's original assignment to Edwards was authorized by his employer on a printed form of that company entitled "Travel Order and Assignment." This travel order was subsequently extended every 90 days until after the period in issue. A timeclock punchcard was maintained in petitioner's name in Santa Monica for the entire period material hereto. Douglas had some testing employees at Edwards who did not have punchcards in Santa Monica.

The company gave petitioner a transfer-of-work order whenever he left Edwards to prepare a plane for transfer to Edwards and then gave him another transfer order to return to Edwards, even though these trips took only about 4 hours.

Petitioner had resided with his family in Ontario, Calif., for about 5 years prior to his employment with Douglas, and Ontario remained his family residence while he was working at Long Beach. When he was transferred to Edwards in April 1955, he rented a motel room in Lancaster, Calif., a city of approximately 68,000 population located 30 miles from Edwards. Respondent waived objection to the introduction by petitioner of an affidavit made by a Lancaster real estate broker which states in relevant part:

Affiant further alleges that Edwards Air Foce [sic] Base, Edwards, California, is in the general area known as the Antelope Valley, and is some 30 odd miles distant from Lancaster.

Affiant alleges that during the years 1954, 1955, and 1956 and into the Fall of 1957, the Antelope Valley was undergoing a "boom" and that housing during said period of time was at a premium. That during said years there was inadequate and insufficient housing in the Antelope Valley area and that as a consequence, persons working at Edwards Air Force Base from necessity were often forced to commute to and from Lancaster, which was the most proximate area to Edwards Air Force Base of civilized habitation. That, during said periods of time, the only housing available at Edwards was for military personnel, or in rare instances, for selected civil servants.

Petitioner's family remained in Ontario until June 20, 1955, then joined him in Lancaster. At least a part of the reason for this 2½

months wait was so that the children could finish the school year in Ontario. The family occupied a rented house in Lancaster from June 20, 1955, until October 1956 at which time petitioner entered into a 2-year lease for another house in Lancaster, paying the first and last months' rent in advance. The local practice was that a landlord would not seek damages for breach of lease other than forfeit of the last month's rent. Petitioner's employment at Edwards was temporary until June 20, 1955, and indefinite thereafter.

Petitioner was paid a per diem allowance of $7 in addition to his regular wages for most of the period from April 5, 1955, through December 31, 1957. Douglas did not place any restriction on petitioner's use of the per diem allowance and petitioner has not placed in the record any proof of his actual expenses save for $6 per day for motel and more than $1 per day for his meals until June 20, 1955, and his estimate of 7 cents or 8 cents per mile for automobile expenses during the entire period.

For the taxable year 1955, petitioners reported $7,217.63 as gross income and indicated on the face of the return that an additional $1,851.50 had been received as "Per diem for living expenses away from Douglas Santa Monica plant." For the taxable year 1956, the petitioners reported $7,813.92 as gross income, indicating on the face of the return that an additional $2,576 had been received as "Per diem received while away from home base, Santa Monica, Cal." For the taxable year 1957, petitioners reported $6,854.62 as gross income, indicating on the face of the return that an additional $2,450 had been received as "Per diem received while working away from home base of Santa Monica, Cal."

### OPINION.

The issue is whether the per diem allowances paid to petitioner were reimbursements for deductible traveling expenses [2] incurred while "away from home in the pursuit of a trade or business" under the purview of sections 62(2)(B) and 162(a)(2).[3]

Petitioner contends that his "home" was the Los Angeles area and that his duty at Edwards was "temporary." Respondent avers that petitioner's "home" during the period under scrutiny was Edwards; that petitioner's term at Edwards was "indefinite"; and that the rele-

---

[2] Although he originally excluded them from gross income, petitioner does not contest that the relevant allowances are so includable.

[3] SEC. 62. ADJUSTED GROSS INCOME DEFINED.

For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(2) TRADE AND BUSINESS DEDUCTIONS OF EMPLOYEES.—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(B) EXPENSES FOR TRAVEL AWAY FROM HOME.—The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while

vant per diem allowances were additional compensation for increased living expenses rather than reimbursement for deductible traveling expenses.

In *Commissioner* v. *Flowers*, 326 U.S. 465, 470, the United States Supreme Court declared that:

> Three conditions must * * * be satisfied before a traveling expense deduction may be made * * *:
>
> (1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. * * *
>
> (2) The expense must be incurred "while away from home."
>
> (3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade.

*Flowers* did not resolve the issue of the proper interpretation of "home." It merely found, under the third condition, that the expenses which taxpayer sought to deduct were not incurred in the pursuit of his employer's business.

Petitioner relies on an exception to the third *Flowers* condition to the effect that a deduction may be allowed when a taxpayer is on a "temporary" assignment away from home. See *Peurifoy* v. *Commissioner*, 358 U.S. 59; *E. G. Leach*, 12 T.C. 20.

Determination of this question is purely factual and a principal consideration is whether the employment was such that its termination within a short period could be foreseen. *Leo C. Cockrell*, 38 T.C. 470, 479, on appeal (C.A. 8), and cases there cited.

Petitioner originally arrived at Edwards with the reasonable belief that he would spend only 3 months or less there before traveling with the project he was then working on, first to Florida and then to Alaska. This belief continued for approximately 10 weeks, during which time his family remained away from the Edwards vicinity and his expenses for motel and meals at least equaled the $7 per diem paid by his employer. We have found that from April 5, 1955, to June 20, 1955, petitioner's assignment at Edwards was temporary and it follows that the $7 per day is deductible for such period.

When petitioner's assigned aircraft was taken to Florida without him on about June 20, 1955, and his family moved to Lancaster on that

---

away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) In General.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

* * * * * * *

(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business: * * *

same date, the temporary-versus-indefinite aspects of petitioner's employment at Edwards were entirely changed. The relevant facts are all included in our findings, and considering the record as a whole, we have found that petitioner's stay at Edwards was "indefinite" from June 20, 1955, through the end of the period in issue.

Petitioner's family home had been Ontario where the rented house, occupied by the family, had been maintained. We must conclude from the record, and from petitioner's failure to prove otherwise, that no family ties, obligations, expenses, or even contacts were retained in Ontario (or indeed in the Los Angeles area) after June 20, 1955, when the family moved into a rented house in Lancaster. We note that the mode of living was similar in that houses were rented, rather than owned, on each occasion.

"Temporary" employment may become "indefinite" since reasonable foreseeability is a function of an ever-changing factual context. *Arnold P. Bark*, 6 T.C. 851, 855; *Floyd Garlock*, 34 T.C. 611, 616. After June 20, 1955, it could not have reasonably been foreseen that petitioner's stay at Edwards would terminate within a reasonably short period of time.

Petitioner's position (as to this later period) seems to be that living expenses in Lancaster were higher than they had been in Ontario, but save for his estimate that his auto expenses amounted to 7 or 8 cents per mile,[4] there is no proof that this is so.

It is now axiomatic that the "away from home" provision of the statute is to mitigate the burden of the taxpayer forced by his business or employment to pay the expenses of maintaining two places of abode. The concept is well expressed by Judge Ross in *James* v. *United States*, 176 F. Supp. 270, 272 (D. Nev. 1959) :

No person is permitted to deduct living expenses generally, and ordinarily people are employed in the immediate vicinity of their home. However, there are certain employments which require the taxpayer to be and remain away from his home for extended intervals of time, during which period he is incurring additional and *duplicitous* expenses; that in order to equalize the burden between the "home" working person and the "away from home" working person an exemption should be granted as to the extent of travel expense, meals and lodging incurred by the "away from home" taxpayer to the extent that they are the ordinary and necessary expenses, incident to the "away from home" employment. [Emphasis supplied.]

See also *Gunnar Van Rosen*, 17 T.C. 834, and *Harvey* v. *Commissioner*, 283 F. 2d 491 (C.A. 9, 1960), reversing 32 T.C. 1368 on other grounds, where the court observed at page 495 :

The aim of the Congress was, apparently, "to equalize the burden between the taxpayer whose employment requires business travel and the taxpayer whose

---

[4] In connection with his contention that his expenses for driving to and from work are deductible.

employment does not." The taxpayer who is away from home for short periods of time has the burden both of maintaining his home abode and of meeting the living expenses of his place of employment. It is not reasonable to expect the employee to dispose of his home every time the requirements of his employer's business necessitate his being away for an indefinite period of a few weeks or a few months; hence a special deduction is allowed to mitigate the burden which this taxpayer carries. * * *

Since there has been no proof of increased living expenses (other than auto) in connection with maintenance of the family residence at Lancaster, that is an end of this phase of the case and no part of the $7 per diem is allowed in this connection.

As to petitioner's automobile expense, or mileage, driving the 60-mile round trip to work between Lancaster and Edwards for the period commencing June 20, 1955, we note that the Ninth Circuit has recently allowed travel expenses necessitated by the unfitness of the work area for "civilized habitation," even though the taxpayer was on an "indefinite" assignment. *Wright* v. *Hartsell*, 305 F. 2d 221 (C.A. 9, 1962).

In *Hartsell*, a worker resided in a town 70 miles distant from his worksite. Residence was prohibited on or near the worksite and it was found that the "nearest habitable community" was a town some 46 miles distant from said work site. Although the worker's assignment was "indefinite," a travel deduction was allowed. It was computed from the 46-mile-distant town and not from the 70-mile-distant residence.

*Hartsell* is quite distinguishable from the instant case. The taxpayer in *Hartsell* worked at an Atomic Energy Commission site where the Federal Government was conducting atomic research. The AEC site encompassed an area of more than 1,500 square miles. It was situated in a vast desert and was remote from any town or place of habitation. No one was allowed there except on business, and access was gained by a single road with a control gate at the entrance. The taxpayer traveled a daily round trip of approximately 140 miles.

In the case at bar, the worksite was not situated in the midst of a vast desert, but was in a valley which was undergoing a "boom." Although proper housing in this valley was scarce, this is quite different from a worksite in a vast desert remote from any town or place of habitation.

As we said in *Henry C. Warren*, 13 T.C. 205, 207–208:

Petitioner's maintenance of a home for his family in Cornelia may have been caused by a housing shortage in Charleston, but that consideration was irrelevant to the prosecution of his employer's business. The extra expense of his trips to and from Cornelia and of his living apart from his family in Charleston did not advance his employer's business. They were thus personal expenses, not business expenses, and are accordingly not deductible. *Commissioner* v. *Flowers*, *supra*; *Ney* v. *United States*, 171 Fed. (2d) 449 (C.C.A., 8th

Cir., 1948) ; certiorari denied, 336 U.S. 967 (1949) ; *York v. Commissioner*, 160 Fed. (2d) 385 (1947) ; *Virginia Ruiz Carranza (Zuri)*, 11 T.C. 224 ; *William W. Todd*, 10 T.C. 655 ; *John D. Johnson*, 8 T.C. 303 ; *S. M. R. O'Hara*, 6 T.C. 841.

Further, the taxpayer in *Hartsell* traveled approximately 70 miles each way and the nearest "habitable community" was found to be 46 miles distant from the worksite. In the instant case, petitioner traveled about 30 miles each way, the distance from Lancaster to Edwards.

We express no opinion as to the 70- and 46-mile distances but we view the 30-mile trip involved here as commuting, the expenses of which are personal and not deductible. *Frank H. Sullivan*, 1 B.T.A. 93 ; *Chester C. Hand, Sr.*, 16 T.C. 1410 ; *Darrell Spear Courtney*, 32 T.C. 334 ; *William L. Heuer, Jr.*, 32 T.C. 947, affirmed per curiam 283 F. 2d 865 (C.A. 5) ; *Lenke Marot*, 36 T.C. 238, on appeal (C.A. 2).

In *Barnhill* v. *Commissioner*, 148 F. 2d 913 (C.A. 4), affirming a Memorandum Opinion of this Court, it was stated that (p. 917) :

the regulations * * * expressly forbid the deduction of commuters' fares. This prohibition indeed would be unauthorized if the word "home" were given its ordinary meaning, for there can be no doubt that in a literal sense one who lives in the suburbs and does business in the city must pay travel expenses while absent from his home in the pursuit of business. It is significant that these provisions of the regulations have been maintained and enforced throughout successive re-enactments of the statute and that they have been followed not only in the decisions of the Tax Court but in the settled administrative practice. See O.D. 905, 4 Cum. Bull. 212 (1921) ; O.D. 1021, 5 Cum. Bull. 174 (1921) ; I.T. 1264, I–1 Cum. Bull. 122 (1922) ; I.T. 1355, I–1 Cum. Bull. 194 (1922) ; I.T. 1380, I–2 Cum. Bull. 88 (1922) ; I.T. 3314, 1939–2 Cum. Bull. 152 ; G.C.M 23672, 1943 Cum. Bull. 66. Under these circumstances, the regulations and the administrative interpretation must be deemed to have received implied legislative approval. *Helvering* v. *Winmill*, 305 U.S. 79, 83, 59 S. Ct. 45, 83 L. Ed. 52. * * *

See also section 1.162–2(a) and (e) of the current regulations. Petitioner was commuting and his expenses were personal. Therefore we allow no deduction for petitioner's automobile expense.

*Decision will be entered under Rule 50.*