NORMAN CERVILLA and MARILYN CERVILLA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cervilla v. Commissioner
Docket No. 8634-74.
United States Tax Court
T.C. Memo 1976-174; 1976 Tax Ct. Memo LEXIS 235; 35 T.C.M. (CCH) 775; T.C.M. (RIA) 760174; May 27, 1976, Filed Norman Cervilla, pro se. Robert K. Dowd, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency of $2,695.92 in petitioners' [1] 1972 income tax. Concessions having been made, the issues presented for our decision are as follows: 1. Whether payments made by petitioner's employer to petitioner in 1972 as reimbursement for expenses incurred by petitioner while working in West Virginia are includable in petitioner's gross income under section 61; [2]
2. Whether such expenses were incurred by petitioner while he was "away from home" so as to be deductible under section 162(a)(2); 3. Whether petitioner should be allowed to deduct expenses incurred in traveling on weekends between his place of employment in West Virginia and his residence in Ohio; and 4. Whether petitioner is entitled to certain interest expense deductions under section 163. *237 FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners Norman and Marilyn Cervilla filed a joint income tax return for the taxable year 1972 with the Internal Revenue Service Center, Cincinnati, Ohio. Petitioners resided in Annapolis, Maryland, at the time the petition herein was filed. During 1972, the year at issue, petitioner was employed by T. D. Morlang (Morlang) as a building superintendent. Petitioner began working for Morlang in this capacity in 1969, and continued in his employ until February 1973. About November 1969, petitioner was hired by Morlang to supervise the completion of one of Morlang's building projects located in Parkersburg, West Virginia. At that time, Morlang had four housing projects in progress in West Virginia. The project in Parkersburg was estimated to last about six months. In March 1970, when this job was almost finished, Morlang asked petitioner to supervise work at a housing project in Montgomery, West Virginia (hereinafter, the Montgomery job). This job involved the construction of a federal housing project for the elderly, and was scheduled to be completed in 10 or 11 months. However, soon after *238 petitioner began work on the Montgomery job, a union strike halted all work. The strike lasted for about eight months during which period, at Morlang's direction, petitioner visited the jobsite each day for a few hours. During the course of the strike, petitioner did not know from one day to the next when the labor dispute would be settled and work would be resumed. After the strike ended, the montgomery job encountered further difficulties stemming from the indictment of some federal officials and, again, the project was stopped for awhile. Work resumed for about a month but was once again halted for several months because of problems getting the Government to approve certain plans and change orders. However, by the end of 1971 the Montgomery job was nearing completion. During and after the period of the strike at the Montgomery job, pettitioner also worked for short periods of time on a building project in St. Albans, West Virginia, and on the Hannah Drive building project in Charleston. This work was performed at Morlang's direction. In about December 1971, petitioner was scheduled to start work supervising the construction of two other buildings in Montgomery, but *239 soil samples taken at the site indicated that the buildings as originally designed could not be built. Petitioner was attempting to design a type of building that would be suitable for the location when the Federal Government placed a moratorium on any additional construction of this nature, and these two projects were terminated. After termination, petitioner's only duties were to supervise the completion of the Montgomery job. The work on the two projects which were canceled and the completion of the original project in Montgomery lasted through 1972 and until February 1973, when petitioner left Morlang's employ and returned to Ohio. While he was working on the Montgomery job in 1972, petitioner lived in an apartment in Charleston, West Virginia, about 30 miles from the worksite. During the entire year, petitioner's wife and three children lived in Warren, Ohio, approximately 250 miles from Charleston. Petitioner and his family were quite attached to their home in Warren, and petitioner never had any intention of moving his family to West Virginia during the approximate 40 months of his employment in that State. On approximately 40 weekends during 1972 petitioner drove *240 home from West Virginia and, on his 1972 return, he claimed business deductions of $2,496 for the cost of such trips. During 1972 Morlang paid petitioner a salary of $18,500. In addition, Morlang expended $1,380 on behalf of petitioner and also paid him $6,726.47 directly. Part of this latter amount represented payments for living expenses and the remainder represented reimbursements, at 12 cents per mile, for business-related autombile trips taken by petitioner. Petitioner kept no records to substantiate the number of miles he drove on these trips or the amount he was paid as reimbursement. In computing petitioner's medical expense deduction for the year at issue, respondent stipulated at trial that petitioner should be allowed $150 as one-half of his insurance premiums for medical care paid during the year instead of the $75 allowed by respondent in the notice of deficiency. OPINION In addition to his annual salary, petitioner received $8,106.47 from Morlang in 1972. Of this amount, $1,380 was paid on his behalf for living expenses incurred while working in West Virginia. The remaining $6,726.47 was paid directly to petitioner as reimbursement for both living expenses *241 and certain business-related automobile trips he made during the year. Petitioner failed to include this $8,106.47 in gross income on his 1972 return. Petitioner did not argue at trial, and does not on brief, that such amount should be excludable, and we hold that he erred in not including the $8,106.47 in his 1972 gross income. Sec. 61; Leo C. Cockrell,38 T.C. 470 (1962). Before deciding whether petitioner is entitled to deduct living expenses incurred while working in West Virginia, we must first consider a problem that arose during the trial of this case. The parties stipulated that during 1972 petitioner received direct payments of $6,726.47 as reimbursement for "living expenses" while working in West Virginia. Respondent determined that this amount was paid to petitioner as reimbursement for travel, meals, and lodging. Respondent assumed that the travel portion of the reimbursement was for commuting expenses since petitioner lived approximately 30 miles from the worksite in Montgomery. However, at trial petitioner testified that a part of his travel reimbursement was for various business-related automobile trips he took at Morlang's direction to nearby *242 cities. Unfortunately, petitioner kept no records substantiating the expenses incurred on these automobile trips, and offered no supportive evidence other than his own testimony at trial. Although we believed his testimony on this matter, we cannot allow any deduction without substantiation by adequate records or by some corroborative evidence of his own statement. Sec. 274(d); Walter L. Woodward,50 T.C. 982, 993-994 (1968). The next question is whether the remainder of the $8,106.47, which petitioner received either directly or indirectly for travel, meals and lodging while working in West Virginia, is deductible under section 162(a)(2). [3]
This question narrows to the now familiar issue of whether *243 during 1972 petitioner's employment in West Virginia should be characterized as "temporary" or "indefinite." Harry F. Schurer,3 T.C. 544 (1944), acq. 1944 C.B. 24. Petitioner quite naturally argues that his employment in West Virginia was temporary, while respondent takes the position that such employment was at best indefinite and that the expenses in question were personal living expenses which are nondeductible under section 262. [4]
Whether employment is temporary or indefinite is a factual question, and the test is generally considered to be whether termination could be foreseen within a relatively short period of time. Beatrice H. Albert,13 T.C. 129 (1949). After considering the evidence presented, we find that petitioner's employment in West Virginia during 1972 was of an "indefinite" duration. Therefore, his "home" for purposes of section 162(a)(2) was at his place of employment in West Virginia, and the expenses incurred for travel, *244 meals, and lodging were not incurred while "away from home." Accordingly, the claimed deduction must be disallowed. We think that when petitioner first went to West Virginia in November 1969, to work for Morlang his job was "temporary." He was hired for one job that was estimated to be, and was in fact, completed within six months. However, employment that is "temporary" at the outset may in time become indefinite, Leo M. Verner,39 T.C. 749 (1963), Cf. also Emil J. Michaels,53 T.C. 269 (1969), and we think such a change occurred in the instant case. In March 1970, Morlang asked petitioner to supervise another building project in Montgomery and, as soon as he began work at that site, a strike halted all work. We think that at this point petitioner's employment became indefinite and remained so until his termination in February 1973. Petitioner testified that during the strike he did not know from one day to the next when the strike would end and work would be resumed. Further, even after the strike, the Montgomery job was plagued with additional delays. The indictment of various federal officials connected with the job caused a work stoppage. *245 Numerous other delays resulted from failure to obtain governmental approval of plans and change orders. In December 1971, at Morlang's request, petitioner began work at two other building projects in Montgomery but delays were caused by problems with the soil, and petitioner was forced to work on a new building design. Then the Federal Government placed a moratorium on these housing projects and petitioner was reassigned to complete the original Montgomery job. Petitioner testified that he had never encountered so many problems in a construction project and that "the job extended beyond my control." Given this factual setting, we simply cannot conclude that during 1972 petitioner could reasonably foresee the termination of the job within a reasonably short period of time. The next issue we must decide involves the approximate 40 weekend trips petitioner made during 1972 between his job in West Virginia, and his residence in Warren, Ohio. He states that each round trip was approximately 520 miles and, at 12 cents per mile, he should be allowed a deduction of $2,496. Again, petitioner argues that such a deduction should be allowed under section 162(a)(2) and, again, we disagree. *246 The Supreme Court in Commissioner v. Flowers,326 U.S. 465, 470 (1946), has stated that the following three conditions must be satisfied before a traveling expense deduction under section 162(a)(2) may be allowed: (1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. * * * (2) The expense must be incurred "while away from home." (3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade. The burden of proving that all of these conditions have been satisfied falls on petitioner, and we find that such burden has not been met with respect to the third such condition. [5] Petitioner was unable to establish any direct connection between these weekend trips and the carrying on of Morlang's trade or business. In fact, the record clearly shows that such trips were simply to visit his family in Ohio. As such, they are personal not business *247 expenses and must be disallowed. [6] Sec. 262. Finally, petitioner claimed *248 an interest deduction of $2,088 on his 1972 return of which respondent disallowed $449.68 because of lack of substantiation. Petitioner testified that he paid the disputed amount of interest in connection with the purchase of two automobiles. Petitioner produced no records or other substantiation of these payments and, accordingly, we must hold for respondent on this issue. Rule 142(a), Tax Court Rules of Practice and Procedure.
Decision will be entered for the respondent.* Footnotes
1. Petitioner Marilyn Cervilla is a party to the instant case solely as a cosigner of a joint return with her husband, Norman Cervilla. Hereinafter, we will refer to Norman Cervilla as the petitioner in this case. ↩
2. Unless otherwise indicated all statutory references are to the Internal Revenue Code of 1954.↩
3. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. --There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩
4. SEC. 262. PERSONAL, LIVING, AND FAMILIY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
5. Respondent urges that we disallow this deduction under the same rationale that we disallowed the deductibility of the living expenses, viz, failure to satisfy the "away from home" requirement.We disagree and fail to understand how respondent, having successfully argued that petitioner's "tax home" was his place of employment in West Virginia, can also logically contend that when petitioner traveled from West Virginia to Warren, Ohio, he was not "away from home." Thus, on this issue, we concur with respondent's conclusion but not his reasoning. ↩
6. An identical situation arose in Timothy Howard,T.C. Memo. 1970-88, except respondent had conceded in that case that petitioner's employment was "temporary." Nevertheless, under the authority of Commissioner v. Flowers,326 U.S. 465↩ (1946), we held the weekend trips to be nondeductible personal expenses. Because the job was "temporary," however, respondent conceded the deductibility of one of the round trips. Our finding in the instant case that petitioner's employment was "indefinite" precludes such a deduction here.