JEANNIE S. MICHAEL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
MICHAEL v. COMMISSIONER
Docket No. 815-77.
United States Tax Court
T.C. Memo 1978-463; 1978 Tax Ct. Memo LEXIS 46; 37 T.C.M. (CCH) 1847-90; November 22, 1978, Filed Jeannie S. Michael, pro se. Arthur A. Oshiro, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Fred S. Gilbert, Jr., pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *47 OPINION OF THE SPECIAL TRIAL JUDGE GILBERT, Special Trial Judge: The respondent determined a deficiency in the petitioner's Federal income tax for the year 1973 in the amount of $973. The only question for decision is whether the petitioner is entitled to deduct, under section 162(a)(2), expenses incurred and unreimbursed for transportation and for meals and lodging while away from Waynesboro, Virginia, in pursuit of her business during the year 1973. This case was submitted for decision under Rule 122 of the Tax Court Rules of Practice and Procedure. All of the facts have been stipulated by the parties. The stipulation of facts and exhibit attached thereto are incorporated herein by this reference and are adopted as our findings of fact. Petitioner filed a timely Federal income tax return for the year 1973 with the Internal Revenue Service Center at Philadelphia, Pennsylvania. At the time the petition herein was filed, petitioner resided at 129 Sixth Street, Huntington Beach, California. The petitioner was born and reared in Waynesboro, Virginia. She resided with her parents at their home there, both prior to and during the year in question, except while away *48 on temporary jobs. The petitioner filed a state of Virginia income tax return for the year 1973 and, also, maintained a savings account that year with the Waynesboro Dupont Employees Credit Union, Inc. The petitioner did not pay any rent to her parents for the use of a room in their home, nor did she contribute any money to them for the purchase of groceries, the payment of utility bills, or the payment of other expenses associated with the upkeep of a home. Even though the petitioner spent several months of the year 1973 away from Waynesboro, Virginia, it was always her intention to reside there with her parents. During that year, whether in Waynesboro or away, she kept her clothing and other personal possessions in her room at her parents' home there. The petitioner was employed for a part of the year 1972 as a secretary to the official in charge of a temporary field office set up by the Department of Housing and Urban Development (hereinafter referred to as HUD) in Waynesboro. Her employment there ended, however, when the temporary field office was closed. Petitioner was not employed at all in Waynesboro, Virginia, during the year 1973. The petitioner's work in 1972 *49 had impressed the officials of HUD, so she was employed in 1973, as a housing counselor, by the Disaster Housing Office, an agency under HUD. In this job, she was not employed continuously by HUD throughout the year 1973, but was actually employed only on those occasions when she was assigned to some part of the country that had been officially declared to be a "disaster area". Since each of these separate assignments to particular disaster areas would usually last less than 90 days, the petitioner's job was temporary in nature. During the year 1973, the petitioner was employed at disaster areas located in and around Monroe, Michigan and Toledo, Ohio. After the need for HUD's disaster program was over in a given location, either the petitioner's employment with HUD was terminated or she was assigned to a new disaster area. When the petitioner was not employed by HUD at a particular disaster area, she resided with her parents at their home in Waynesboro, Virginia. It is uncertain just how much time the petitioner spent in Waynesboro, Virginia, during the year 1973. If she was assigned to only two disaster areas and each assignment lasted for 90 days or less, as indicated in *50 the stipulation, then it appears that she may have been in Waynesboro for as much as six months. However, the petitioner's income tax return filed for the year 1973 claims that she was "away from home on business" for 350 days during that year. This would seem to indicate that she was in Waynesboro for only about two weeks during the year. Petitioner claimed employee business expenses in the amount of $260.42 for transportation and in the amount of $4,366.68 for meals and lodging, or a total of $4,627.10 on her income tax return for the year 1973. The respondent disallowed the entire deduction. In order to qualify for a deduction under section 162(a)(2), [3] the petitioner must show (1) that her expenses were ordinary and necessary, (2) that the expenses were incurred while she was "away from home", and (3) that she incurred the expenses in pursuit of her business. Commissioner v. Flowers,326 U.S. 465 (1946); Hicks v. Commissioner,47 T.C. 71 (1966).The respondent only challenges whether petitioner's expenses were incurred "while away from home" within the meaning of section 162(a)(2). *51 On these facts, we hold that Waynesboro, Virginia was not the petitioner's home for Federal income tax purposes. It is no doubt true that she sincerely believed that the home maintained by her parents in Waynesboro during her girlhood was still her home. And while she retained some contacts there and made a point of returning there, when not engaged in her temporary employment, this was only natural for a young woman leaving her parents' home to work in distant cities for the first time. However, it is not sufficient to establish that Waynesboro was her "tax home" in 1973 for a deduction under section 162(a)(2). This case is quite similar to that of Fisher v. Commissioner,23 T.C. 218 (1954), affd. 230 F.2d 79 (7th Cir. 1956). In that case, the taxpayer was a professional musician who attempted to prove that Milwaukee, Wisconsin was his "tax home" for this purpose. He was raised in Milwaukee, voted there, filed his tax returns there, and procured his automobile license there. He spent several weekends during the year with his mother-in-law at her apartment in Milwaukee, used it as his mailing address, and returned there whenever possible. Also, *52 he contributed $5 a month toward the payment of her telephone bill. On these facts, the Court held that the taxpayer had not established that his mother-in-law's apartment was his home and that, while he was away from Milwaukee in the course of his employment, he was not "away from home in the pursuit of his trade or business" within the meaning of the statute. In its opinion in the Hicks case, supra at 73, the Court briefly reviews several other cases in which the same conclusion was reached on similar facts and states that, in each of the cases, "it was found that the taxpayer literally carried his home on his back." These cases are: James v. United States,308 F.2d 204 (9th Cir. 1962) (a traveling salesman); Deneke v. Commissioner,42 T.C. 981 (1964) (a traveling salesman); Mitnick v. Commissioner,13 T.C. 1 (1949) (the manager of traveling theatrical companies); Duncan v. Commissioner,17 B.T.A. 1088 (1929) affd. per curiam 47 F.2d 1082 (2d Cir. 1931) (a traveling salesman). In its opinion in the case of Verner v. Commissioner,39 T.C. 749 (1963), the Court made the *53 following statement (page 754): It is now axiomatic that the "away from home" provision of the statute is to mitigate the burden of the taxpayer forced by his business or employment to pay the expenses of maintaining two places of abode. * * * This principle was also enunciated in the Hicks case, supra. In that case, the petitioner, a traveling salesman, contributed $100 toward the expenses of his parents' home in Paragould, Arkansas. It was not clear whether this amount was paid to defray expenses incurred during a period of two weeks that the petitioner was in Paragould or whether it represented an aggregation of small monthly payments. However, the Court held that, in either case, the petitioner did not have such substantial, continuing, and duplicate expenses in Paragould as to justify the allowance of a deduction for the expenses of food and lodging while traveling. In the present case, it was stipulated that the petitioner did not incur any of the usual expenses of maintaining a residence or a home in Waynesboro, Virginia. Therefore, she could not have incurred any such duplicate expenses while away in other cities on her temporary jobs. While the petitioner's *54 parents maintained a home in Waynesboro, Virginia, it is apparent that the petitioner, herself, did not maintain a home there. The petitioner argues that her obligation of support to her parents, if ever needed, should be considered the requisite "duplicate" living expense "in the event that such an expense is a determinative factor." The present worth of the moral obligation to support one's parents in the distant future is the year 1973. In any event, the purpose of the statute is to mitigate the effect of actual, current expenditures that are duplicated. And the recognition of such a moral obligation of support, while laudable in itself, does not constitute an actual, current expenditure. Since the petitioner was not away from home during the year 1973, the respondent's disallowance of the deduction of $4,366.68 claimed for the expense of meals and lodging is sustained. However, the requirement of being away from home does not attach to a deduction claimed for the expense of transportation in connection with temporary employment. Therefore, the petitioner is allowed a deduction, under section 162(a), of $260.42 for the cost of transportation incurred as an ordinary and *55 necessary expense in her temporary employment, for which she received no reimbursement from her employer. * * *
In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and↩