R. L. TAYLOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Taylor v. Commissioner
Docket No. 6368-78.
United States Tax Court
T.C. Memo 1980-376; 1980 Tax Ct. Memo LEXIS 212; 40 T.C.M. (CCH) 1206; T.C.M. (RIA) 80376; September 11, 1980, Filed *212 Held, amount of deduction for away from home travel expenses determined. D. Derrell Davis, for the petitioner. Patrick E. McGinnis, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: By letter dated March 9, 1978 respondent determined a deficiency of $2,485.48 in petitioner's 1975 Federal income tax. The issue for our decision is whether petitioner is entitled to deduct under section 162(a) [1] certain travel expenses and, if so, whether petitioner has met the substantiation requirements of section 274(d). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner was a resident of McGehee, Arkansas, when he filed his petition herein. [2] *213 Petitioner's 1975 Federal income tax return was filed with the Internal Revenue Service Center, Ogden, Utah. Petitioner has resided in Savannah, Georgia, during most of his life. Petitioner is an iron worker by trade and during 1975 petitioner was a member of the Savannah local of the iron worker's trade union. During the early part of 1975 petitioner worked in the Savannah area for Steel Erectors, Inc. At some time in the early part of 1975 petitioner was laid off his job by Steel Erectors. Petitioner thereafter filed for unemployment insurance compensation and sought other employment as an iron worker in the Savannah area. Through his local petitioner learned of employment opportunities in the Tacoma, Washington area. In late March of 1975, petitioner left Savannah and drove to Tacoma. Petitioner was employed in Tacoma by Wright Schuchart Harbor (Wright) for a scheduled 3-year construction project. The iron workers on this project, including petitioner, were employed on a seasonal basis. The project was scheduled in phases and as a consequence petitioner would be subject to layoffs by Wright as petitioner's portion of each phase was completed. While in Tacoma petitioner obtained a work permit from the Tacoma *214 local of the trade union. The Tacoma local maintained three lists of iron workers, entitled the A, B, and C lists. Petitioner was on the C list, which consisted of nonlocal members called "travelers" or "boomers." Members of the C list were the first workers to be laid off by an employer and the last workers to be called back by an employer when the layoff ended. In order to qualify for the B list, and the consequently greater job security, a traveler would have to work 600 to 800 hours per year for 2 years. As a result of the phase-method of the Wright project and petitioner's status with the Tacoma local, petitioner was laid off several times from the Wright project. During these layoffs, which usually lasted 1 or 2 weeks, petitioner stayed in Tacoma rather than returning to Savannah. Petitioner decided to stay in Tacoma because any employment opportunities which may have opened up there would have to be filled quickly. Petitioner obtained several jobs in the Tacoma area during the Wright layoffs. In or about late August of 1975 the first phase of the Wright project was completed and petitioner returned to Savannah by car. [3] Petitioner's efforts to obtain work in the Savannah *215 area were again unsuccessful. The Savannah local suggested to petitioner that his opportunities were better in Seattle or Alaska. Petitioner thereafter decided to return to Tacoma. Sometime around September 1975 petitioner drove from Savannah to Tacoma. Upon finding no work available in Tacoma, petitioner drove from there to Alaska, where petitioner found work with Fluor Alaska, Inc. (Fluor Alaska). [4] Petitioner stayed in Alaska for about 4 weeks, until he decided to return to Tacoma. Petitioner was not laid off or dismissed by Fluor Alaska. In early November, petitioner returned to Tacoma to accumulate hours in order to qualify for the B list. Petitioner remained in Tacoma until approximately December 25, 1975. Petitioner then drove back to Savannah, where he stayed until late January 1976, when petitioner returned to Tacoma. During 1975 petitioner stayed at his parent's home whenever he was in Savannah. Petitioner kept all of his possessions there except for a suitcase and a duffel bag which *216 he took to Tacoma. Petitioner paid no rent there but helped with the maintenance and upkeep. While he was away from Savannah petitioner periodically sent small amounts of money to his parents to help with their house and support. During 1975 petitioner stayed at the Siesta Motel whenever he was in Tacoma. Petitioner paid a weekly rental of $60 for a total of 34 weeks at the Siesta Motel, for which petitioner obtained receipts. [5] Petitioner kept no receipts or records of meals in Tacoma but estimated that he spent from $15 to $18 per day for meals while there. Petitioner worked 6 days per week while employed by Wright. During 1975 petitioner stayed in a camp provided by Fluor Alaska for the 4 weeks he was in Alaska. Petitioner was provided with meals and lodging there and incurred no expenses for those items. The parties have stipulated that the map mileage from Savannah to Tacoma *217 is 3,014 miles and the map mileage from Tacoma to Anchorage is 2,504. During 1975 petitioner made two round trips by automobile between Savannah and Tacoma and one round trip by automobile between Tacoma and Anchorage. At no time during 1975 did petitioner maintain a diary or other record of his odometer readings. Petitioner estimated from a road atlas that he drove 25,200 business miles during 1975. [6]
On his 1975 Federal income tax return petitioner deducted $6,750 for away from home travel expenses under section 162(a)(2). This deduction consisted of $3,330 for auto expense and $3,420 for meals and lodging. In the statutory notice of deficiency respondent disallowed the entire $6,750 deduction. OPINION Petitioner was an iron worker by trade. During 1975 petitioner was employed in Savannah. In March of 1975 petitioner traveled to Tacoma to look for work after being laid off in Savannah. Petitioner worked in Tacoma until late August of 1975, when he was laid off *218 there. Petitioner returned to Savannah for a short period and was unsuccessful in his attempts to find work there. Petitioner then returned to Tacoma where he also could not locate employment. Petitioner thereafter was employed in Alaska for approximately 1 month, after which he returned to Tacoma to improve his union status. Petitioner remained in Tacoma until late December of 1975, when he returned to Savannah. In late January 1976, petitioner again returned to Tacoma for work. On his 1975 Federal income tax return petitioner deducted $6,750 for away from home expenses under section 162(a) (2), which amount respondent disallowed in full. Section 162(a)(2) allows as a deduction all the ordinary and necessary traveling expenses, including amounts expended for meals and lodging which are not lavish or extravagant, paid or incurred while away from home in the pursuit of a trade or business. In order to qualify for a deduction under section 162(a)(2) three conditions must be met: the expenses must have been ordinary and necessary, the expenses must have been incurred while the taxpayer was "away from home" and they must have been incurred in the pursuit of the taxpayer's trade *219 or business. Commissioner v. Flowers, 326 U.S. 465 (1946). Respondent first contends that petitioner's 1975 home was in Tacoma, and that even if petitioner's home was Savannah, then petitioner's employment in Tacoma was indefinite rather than temporary. Petitioner argues that Savannah was his home during 1975 and that his employment in Tacoma was temporary. As used in section 162(a)(2) "home" means the vicinity of the taxpayer's principal place of business. Kroll v. Commissioner, 49 T.C. 557 (1968). Should a taxpayer elect to maintain his residence in an area other than his principal place of business then traveling expenses will be nondeductible personal expenses, section 262. An exception to this general rule of nondeductibility occurs when the taxpayer's employment is "temporary" rather than "indefinite," Peurifoy v. Commissioner, 358 U.S. 59 (1958). When a taxpayer's employment is only temporary it is unreasonable to expect him to relocate his residence to the vicinity of such employment and thus the allowance of a deduction for travel expenses mitigates the impact upon the taxpayer of duplicate and additional living expenses. Verner v. Commissioner, 39 T.C. 749, 754 (1963). *220 Temporary employment is employment the termination of which within a short period can be foreseen. Kroll v. Commissioner, supra, at 562. Whether employment is temporary or indefinite is essentially a question of fact. Verner v. Commissioner, supra, at 753; Cockrell v. Commissioner, 38 T.C. 470, 479 (1962). Consideration must be given to whether, under the circumstances, it was reasonable to expect the taxpayer to move his residence to his place of employment. Kroll v. Commissioner, supra, at 562. Petitioner's initial stay in Tacoma (from late March 1975 until late August 1975) was temporary. Petitioner was hired to work on a projected 3-year construction project. Petitioner was not a member of the Tacoma local of the union and was allowed to work on the project only by reason of a permit granted by the Tacoma local, which permit granted petitioner only "C list" priority. Because of petitioner's union status in Tacoma he would be among the first workers to be laid off of the project and one of the last to be called back. Furthermore, the project was designed to be completed in phases. When petitioner's work was done on the first phase he was sure to be, and in fact was, laid off *221 until that phase was completed by all the workers on the project. At this time petitioner returned to Savannah to seek employment as an iron worker in that area. Petitioner's initial sojourn to Tacoma thus lasted for only 5 months. Furthermore, petitioner's family was in Savannah and petitioner had left most of his personal belongings there. However, upon petitioner's return to Tacoma in September of 1975 we find that petitioner's employment in Tacoma and Alaska was indefinite. Petitioner found no suitable employment in Savannah so he returned to Tacoma, where better opportunities existed. Petitioner's admitted reason for voluntarily returning to Tacoma from Alaska, where petitioner worked during September 1975, was to improve his union status with the Tacoma local chapter so that he could find more permanent work in Tacoma. At this time petitioner had apparently decided to make Tacoma his home for employment purposes and it is reasonable to expect that petitioner would have moved his residence to Tacoma at that time. It is unclear why petitioner returned to Savannah in late December of 1975 or even whether petitioner sought employment while there. However, petitioner soon *222 returned to Tacoma to work. Accordingly, we hold that petitioner's employment in Tacoma was temporary from March 1975 until August 1975 and was indefinite thereafter. Thus, only those expenses paid while petitioner's stay in Tacoma was temporary are deductible under section 162(a)(2). Respondent next contends that even if petitioner's employment in Tacoma was temporary, petitioner has failed to meet the substantiation requirements of section 274(d). Respondent's contention regarding section 274(d) is apparently limited to petitioner's automobile and meal expenses and not to petitioner's lodging expense at the Siesta Motel. Accordingly, we find that petitioner is entitled to deduct $1,320 for lodging from March 1975 until August 1975 (a period of 22 weeks at $60 per week). Section 274(d) provides: (d) Substantiation Required.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, *223 recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. Unless section 274(d) is satisfied no deduction for traveling expenses can be allowed; section 274(d) clearly supersedes, for such expenses, the rule established in Cohan v. Commissioner, 39 F.2d 540 (2nd Cir. 1930). See Sanford v. Commissioner, 50 T.C. 823 (1968), affd. 412 F.2d 201 (2nd Cir. 1969), cert. denied 396 U.S. 841 (1969); Ashby v. Commissioner, 50 T.C. 409 (1968). The taxpayer must establish the following elements of a travel expense by adequate records or sufficient evidence corroborating his own statement: (A) the amount of each separate expenditure, (B) the time and place of the travel, and (C) the business purpose of the expense. "Adequate records" requires the maintenance of an account book, *224 diary, statement of expense or similar record and documentary evidence which, in combination, establish each required element of the expenditure. Section 1.274-5(c)(2)(i), Income Tax Regs. Sufficient corroborating evidence must be direct evidence, such as a written statement or oral testimony of others, or the documentary evidence described in section 1.274-5(c)(2). Section 1.274-5(c)(3), Income Tax Regs.
Petitioner deducted $3,420 for meals and lodging expense incurred while in Tacoma. Of this amount $1,380 represents expense for meals. [7] Petitioner presented absolutely no evidence concerning his expenses for meals except for his estimate made at trial that he spent $15 to $18 per day for meals. Consequently petitioner is not entitled to any deduction for his meals. Petitioner also claimed a deduction of $3,330 for automobile expense. Petitioner's 25,200 business miles claimed apparently consists of three round trips between Savannah and Tacoma *225 (about 6,028 miles per round trip) and one round trip between Tacoma and Alaska (about 5,008 miles). One of these trips between Savannah and Tacoma was made by airplane after petitioner's father's death and thus was erroneously included in petitioner's business mileage, see note 6, supra. Petitioner's $3,330 deduction was calculated as follows: 15"/mile for the first 15,000 miles
$2,250
10"/mile for additional miles (10,200)
1,020
Parking and tolls
60
$3,330
The method employed by petitioner was identical to the method established in Rev. Proc. 74-23, 1974-2 C.B. 476. [8] *226 Respondent maintains that the formula set forth in Rev. Proc. 74-23 does not constitute an exception to the substantiation requirements of section 274. Rev. Proc. 74-23 provides an alternative method for computing the amount of automobile expenses incurred for business purposes. Taxpayers must still meet the other elements of section 274(d) when the alternative method of Rev. Proc. 74-23 is utilized for computing away from home travel expenses. Section 3.07 of Rev. Proc. 74-23 clearly makes this distinction: For this method of computing automobile cost to be acceptable a self-employed individual or employee is required to establish his business mileage (A) for local transportation, in accordance with section 1.162-17(d) of the regulations, and (B) for other travel, in accordance with section 1.274-5. The provisions of such regulations relating to substantiation of the amount of an expenditure are inapplicable to deductions computed under this Revenue Procedure. [9] *227 Thus petitioner must still meet the requirements of section 274(d) with regard to the time and place of the travel and the business purpose of the travel. [10] While we have no doubt from petitioner's testimony that he incurred automobile expenses, petitioner's testimony alone is insufficient to meet the substantiation requirements of section 274(d), as modified by Rev. Proc. 74-23. [11]
Parking fees and tolls of $60 deducted by petitioner, which are separate items from the cost of operating an automobile and hence not subject to the alternative method of Rev. Proc. 74-23, must also be substantiated under section 274(d). Petitioner has presented no evidence regarding these items and therefore *228 cannot deduct such items. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. Although the petition alleges that petitioner was a resident of Savannah, Georgia when the petition was filed, the parties have stipulated that petitioner resided in McGehee, Arkansas at that time and we accept this stipulation as fact.
3. In May of 1975 petitioner's father passed away and petitioner traveled to Savannah by airplane for a short period.↩
4. Petitioner's employment in Alaska was apparently near Anchorage.↩
5. The receipts represent rental payments to the Siesta Motel for the period from March 28, 1975 to August 30, 1975 and for the period from October 2, 1975 to December 25, 1975. Apparently petitioner was enroute to or in Savannah and Alaska for the period between August 31, 1975 and October 1, 1975.↩
6. Petitioner's estimated automobile mileage apparently consisted of three Savannah-Tacoma round trips and one Tacoma-Anchorage round trip, including the trip in May 1975 which petitioner testified he made by airplane.↩
7. Petitioner's return did not differentiate between meals and lodging. We have reached the figure for meals by subtracting $2,040 (total 1975 lodging expenses, see p. 5 supra↩) from $3,420 (total 1975 claimed deduction for meals and lodging).
8. Rev. Proc. 74-23 was modified by Rev. Proc. 77-40, 1977-2 C.B. 574, for taxable years beginning after December 31, 1976, to allow 17" per mile for the first 15,000 business miles and 10" per mile for business miles in excess of 15,000. Rev. Proc. 74-23, as modified, was superseded by Rev. Proc. 80-7, 1980-8 I.R.B. 24 and for transportation expenses paid or incurred after December 31, 1978 a deduction is allowed of 18.5" per mile for the first 15,000 business miles and 10" per mile for business miles in excess of 15,000. Rev. Proc. 80-7 was modified for transportation expenses paid or incurred after December 31, 1979 by Rev. Proc. 80-32, 1980-29 I.R.B. 27↩, which allows a standard mileage rate of 20" per mile for the first 15,000 business miles and 11" per mile for business miles in excess of 15,000.
9. See Ward v. Commissioner, T.C. Memo. 1979-165for the distinction between "local transportation" and "other travel." See also Gay v. Commissioner, T.C. Memo 1980-19↩.
10. See Reinert v. Commissioner, T.C. Memo. 1979-512, on appeal (8th Cir., July 17, 1980); Schneider v. Commissioner, T.C. Memo. 1978-447↩.
11. Because of our finding that only petitioner's first stay in Tacoma was temporary petitioner could only have deducted his first automobile round trip between Savannah and Tacoma under section 162(a)(2) even had petitioner satisfied section 274(d).↩