LONNIE V. HUDSON and MARY L. HUDSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hudson v. Commissioner
Docket No. 3088-80.
United States Tax Court
T.C. Memo 1981-430; 1981 Tax Ct. Memo LEXIS 311; 42 T.C.M. (CCH) 663; T.C.M. (RIA) 81430; August 13, 1981. *311 Held, petitioner was not "away from home" within the meaning of section 162(a)(2), I.R.C. 1954, and, therefore, expenses incurred for mileage, meals, and lodging with respect to his employment are nondeductible. Donald W. MacPherson and Kirk A. McCarville, for the petitioners. Brad S. Ostroff, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $ 1,280.55 in petitioners' 1977 Federal income tax. *312 The sole issue for decision is whether traveling expenses incurred by petitioner Lonnie V. Hudson with respect to his employment are deductible under section 162(a)(2). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Lonnie V. Hudson (hereinafter petitioner) and Mary L. Hudson, husband and wife, resided in Tucson, Arizona, when they filed their petition in this case. They filed their 1977 joint Federal income tax return with the Internal Revenue Service Center, Ogden, Utah. Petitioner is an electrician and a member of the International Brotherhood of Electrical Workers Local Union 518 (hereinafter Local 518) in Globe, Arizona. On October 20, 1975, petitioner was hired by the Bechtel Power Corporation (hereinafter Bechtel) to work on the construction of the Cholla Power Plant project (hereinafter the Cholla plant) in Joseph City, Arizona. He obtained his employment through Local 518. When petitioner commenced employment with Bechtel he made no commitment as to the length of his employment and was told nothing concerning the duration thereof. *313 The Cholla plant was placed in service in 1962 with one generating unit. In 1973, the Arizona Public Service Corporation (hereinafter APS) retained Bechtel, a general contractor, for the purpose of increasing the Cholla plant's generating capacity. When construction of additional generating units began in 1973, APS planned to place a second generating unit (Unit 2) in service in 1976 and a third unit (Unit 3) in service in 1977. APS also planned the construction of a fourth unit (Unit 4) at Cholla which would be completed in 1978. By December 31, 1975, the completion dates for Units 2, 3, and 4 had been postponed to 1978, 1979, and 1980, respectively. In 1976, APS added plans for a fifth generating unit (Unit 5) at the Cholla plant which would be operational by 1983. Since Bechtel required many electricians in the construction of these additional units, it entered into an agreement with Local 518 in 1973 concerning the construction of Units 2 and 3. This agreement was renegotiated in 1976 to include Unit 4. The agreement was common knowledge to the members of Local 518. Local 518 referred union members to jobs according to a grouping system. Members of Group (or Book) *314 1 were given priority, followed by members of Groups 2, 3, 4, and 5, respectively. Bechtel could not satisfy its increasing demand for electricians at the Cholla plant solely from Group 1. When he first began work at the Cholla plant, petitioner was placed in Group 2. Sometime in 1977, petitioner was promoted to the position of general foreman. [2]
From October 20, 1975 through the date of trial, petitioner was, with two exceptions, continuously employed at the Cholla plant. [3] Throughout such employment, petitioner owned a residence in Tucson, Arizona, where his wife and children lived. His residence was approximately 250 miles from his jobsite. Petitioner worked a five-day week and at night he slept in various accommodations near the jobsite. In 1976 and 1977, petitioner stayed in a motel located in the nearby community of Joseph City, which is only two miles from the Cholla plant. On weekends, petitioner traveled to Tucson to be with his family. *315 Petitioner has been in the construction business about 35 years and knew that it would take anywhere from 18 months to 2 years to build each new unit at the Cholla plant. From 1973 through the present time, construction on one or more units at Cholla has been continuous, and only an inconsequential number of electricians working at the Cholla plant were fired. The petitioner's chances for continuous employment at the Cholla plant were good. While Bechtel's agreement with Local 518 permitted Bechtel to dismiss any electricians regardless of their group classification, it made every effort not to lay off competent electricians because it desired to maintain continuity in the program and it was more costly to terminate and rehire workers. Although winter weather conditions sometimes required a reduction in the number of work crews, the crews would be built up when the weather improved. There was no assurance that an employee who was laid off by Bechtel would be reassigned by Local 518 to the Cholla plant once jobs were available. On his 1977 Federal income tax return petitioner claimed a deduction of $ 3,810 consisting of expenses for meals, lodging, and mileage incurred with *316 respect to his employment at the Cholla plant. In the notice of deficiency, respondent disallowed this deduction. OPINION We must determine whether expenses for meals, lodging, and mileage were incurred by petitioner while he was "away from home" within the meaning of section 162(a)(2). Petitioner argues that his home for tax purposes was his Tucson residence and therefore he was "away from home" during his employment at the Cholla plant. Respondent contends that petitioner's tax home was Joseph City and disallowed the deductions petitioner claimed with respect to such employment. As a general, rule, deductions for personal living expenses are disallowed under section 262. Section 162(a)(2), however, allows a taxpayer to deduct traveling expenses if he can establish that they were: (1) ordinary and necessary; (2) incurred while "away from home"; (3) incurred in the pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465 (1946); Verner v. Commissioner, 39 T.C. 749, 753 (1963). This Court has held that a taxpayer's "home" for purposes of section 162 is the vicinity of his principal place of business whenever his personal *317 residence is not located in the same vicinity. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968). There is, however, an exception to this rule when a taxpayer with a well established tax home accepts temporary employment elsewhere. In this context, temporary employment means "the sort of employment in which termination within a short period could be foreseen." Albert v. Commissioner, 13 T.C. 129, 131 (1949). See also Norwood v. Commissioner, 66 T.C. 467, 470 (1976); McCallister v. Commissioner, 70 T.C. 505, 509 (1978); Kroll v. Commissioner, supra at 562. The reason for not shifting the taxpayer's "tax home" to his temporary place of employment is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Kroll v. Commissioner, supra at 562. On the other hand, whenever termination of employment cannot be foreseen within a fixed or reasonably short period of time, the taxpayer's *318 tax home shifts to such place of employment and he does not satisfy the "away from home" requirement. Stricker v. Commissioner, 54 T.C. 355, 361 (1970), affd. 438 F. 2d 1216 (6th Cir. 1971). Furthermore, if employment which was temporary in contemplation at the date of its commencement becomes indeterminate in duration, "the situs of such employment for purposes of the statute becomes the taxpayer's home." Kroll v. Commissioner, supra at 562. See also McCallister v. Commissioner, supra at 509. Bark v. Commissioner, 6 T.C. 851, 854 (1946). Employment may change from temporary to indefinite "due to changed circumstances, or simply by the passage of time." Norwood v. Commissioner, supra at 470. Each case in this heavily litigated area turns on its own facts. Commissioner v. Peurifoy, 254 F. 2d 483 (4th Cir. 1957), affd. per curiam 358 U.S. 59, 61 (1958); Norwood v. Commissioner, supra at 469-470. The Court of Appeals for the Ninth Circuit, to which an appeal of this case would lie, has applied a somewhat different test than *319 this Court to determine whether a taxpayer's tax home has shifted to his present place of employment. In Harvey v. Commissioner, 283 F. 2d 491, 495 (9th Cir. 1960), revg. 32 T.C. 1368 (1959), the Ninth Circuit stated its test as follows: An employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station. What constitutes "a long period of time" varies with circumstances surrounding each case. * * * See also Wright v. Hartsell, 305 F. 2d 221, 224 n. 1 (9th Cir. 1962). On this record, applying either the test of this Court or the Ninth Circuit we hold that petitioner was not "away from home" within the meaning of section 162(a)(2). We are convinced that petitioner had a reasonable probability known to him that he would be employed for a long period of time at the Cholla plant. Since 1973, construction on one or more new units has been continuous. By December 31, 1975, petitioner knew that construction of Units 2, 3, and 4 would continue until 1978, 1979, and 1980, respectively. In addition, the petitioner's employment *320 at the Cholla plant was only interrupted once prior to March 1979, and such interruption was caused by an injury petitioner sustained while at work. Nevertheless, petitioner argues that his employment should be considered to be temporary because there was a risk that he would be laid off. In an effort to persuade us of such a risk, petitioner introduced evidence showing the number of electricians Bechtel hired each month, from January 1974 through August 1979, to work at the Cholla plant. Although this evidence indicated a strong upward trend in the number of employees hired, petitioner points to some occasional dips in the monthly numbers and urges us to conclude that the risk of being laid off made it reasonable for him to view his job as temporary. We reject this argument. Aside from layoffs (for reasons beyond an employee's control) there are several possible explanations for a reduction in the monthly employment figures including voluntary terminations, medical causes, dismissals for cause, and winter weather conditions. at trial, however, petitioner introduced no evidence to prove that the occasional employee reductions were specifically attributable to layoffs as opposed *321 to these other reasons. His failure to do so is difficult to understand in light of the testimony that such information was available. Moreover, the fact that petitioner was promoted to the position of general foreman in 1977 is persuasive evidence that Bechtel valued his services and should have minimized his risk of being laid off. On the record before us, petitioner had every reason to expect his employment at the Cholla plant to continue for a substantial period of time. Although petitioner faced the possibility of not being reassigned to the Cholla plant upon recovering from his injury in June 1976, such a fact is not persuasive on this record. Furthermore, even if we assume his job was temporary in 1975 or 1976, we find that it had become indeterminate in duration by January 1, 1977. Accordingly, we conclude petitioner is not entitled to a travel expense deduction for 1977. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. A foreman supervises one crew of anywhere from 10 to 13 workers. A general foreman supervises up to five different crews.↩
3. The two exceptions are: (1) From February through June 1976, petitioner did not work because of medical problems stemming from an injury he sustained on January 20, 1976; and (2) on March 19, 1979, all electricians were dismissed due to a dispute between Bechtel and the electricians; however, petitioner began working again at Cholla the following week.↩