JOHN R. BRIDE and RUBY L. BRIDE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bride v. Commissioner
Docket No. 4073-79.
United States Tax Court
T.C. Memo 1981-443; 1981 Tax Ct. Memo LEXIS 288; 42 T.C.M. (CCH) 792; T.C.M. (RIA) 81443; August 24, 1981
*288 Held, petitioner John R. Bride was not "away from home" within the meaning of section 162(a)(2), I.R.C. 1954, and, therefore expenses incurred for lodging, meals, and mileage with respect to his employment are nondeductible. Held further, petitioners are not entitled to other miscellaneous deductions in excess of the amount allowed by the respondent. Donald W. MacPherson, for the petitioners. Walter T. Thompson, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $ 1,050 in petitioners' 1976 Federal income tax. After concessions, the remaining issues for decision are: (1) Whether traveling expenses incurred by petitioner John R. Bride with respect to his employment are deductible under section 162(a)(2). [1]
(2) Whether petitioners are entitled to miscellaneous deductions in excess of the amount allowed by respondent. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, John R. Bride and Ruby L. Bride, husband and wife, resided in *290 St. Johns, Arizona, when they filed their petition in this case. They filed their 1976 joint Federal income tax return with the Internal Revenue Service Center, Ogden, Utah. Mr. Bride is an ironworker by trade and a member of the Ironworker's Local Union 75 (hereinafter Local 75) in Phoenix, Arizona. On January 12, 1976, Mr. Bride obtained employment through Local 75 at the Coronado Power Plant project (hereinafter Coronado plant) in St. Johns, Arizona. Bechtel Power Corporation (hereinafter Bechtel), a general contractor, was retained to construct two power units (hereinafter Units 1 and 2) at the Coronado plant. In 1975 and 1978, construction began on Units 1 and 2, respectively. During 1976, the number of ironworkers needed for such construction was generally increasing and did not peak until the middle of 1978. To meet this increasing need for ironworkers at the Coronado plant, Bechtel requested such workers from Local 75. Although Mr. Bride did not receive any contract from Bechtel or from Local 75 which guaranteed employment, he was continuously employed at the Coronado plant from January 1976 until April 1980. Prior to commencing worker at the Coronado plant, Mr. *291 Bride resided with his wife and two children in a trailer located in Glen Canyon City, Utah (hereinafter Glen Canyon). Glen Canyon is approximately 300 miles from St. Johns, Arizona. Upon commencing work at the Coronado plant, Mr. Bride lived in St. Johns. In February 1976, petitioners made a down payment on a trailer lot in St. Johns, and paid off the balance on March 29, 1976. Shortly thereafter, Mr. Bride purchased a trailer for this lot, and his family began living there with him in May 1976. Until Mr. Bride's family joined him in St. Johns, he traveled to Glen Canyon to visit them on weekends. Mrs. Bride sold Avon products in Glen Canyon until she moved to St. Johns in May 1976. On February 22, 1975, petitioners purchased a Mazda automobile for $ 4,535 which Mrs. Bride partly used in her Avon business. Petitioners claimed depreciation on the Mazda on their 1975 return. On their 1976 Federal income tax return petitioners claimed four deductions which respondent has contested. First, petitioners claimed a $ 2,675 travel expense (including meals and lodging deduction with respect to Mr. Bride's employment at the Coronado plant which respondent disallowed in part. Second, *292 petitioners claimed an $ 800 depreciation deduction on the Mazda used in Mrs. Bride's Avon business. Such depreciation deduction was based on using an inflated ($ 4,800) cost basis, failing to subtract salvage value in applying the straight line method of depreciation, and improperly claiming the Mazda was used 50% for business in 1976. Respondent disallowed the depreciation deduction. Third, petitioners claimed a deduction for certain "rental" property expenses totaling $ 1,133 which respondent disallowed. Fourth, petitioners claimed a deduction for automotive (Mazda) repair expenses totaling $ 138.46 which respondent allowed in part ($ 69.23). OPINION Issue 1: Employee Business Expense Deduction
The first issue for decision is whether expenses for lodging, meals, and mileage were incurred by Mr. Bride while he was "away from home" within the meaning of section 162(a)(2). Respondent argues that petitioner failed to prove his tax home was Glen Canyon, Utah, and, therefore, Mr. Bride's travel (business) expenses are nondeductible. We agree with respondent. As a general rule, deductions for personal living expenses are disallowed under section 262. Section 162(a)(2), *293 however, allows a taxpayer to deduct traveling expenses if he can establish that they were: (1) ordinary and necessary; (2) incurred while "away from home"; (3) incurred in the pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465 (1946); Verner v. Commissioner, 39 T.C. 749, 753 (1963). This Court has held that a taxpayer's "home" for purposes of section 162 is the vicinity of his principal place of business whenever his personal residence is not located in the same vicinity. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968). There is, however, an exception to this rule when a taxpayer with a well established tax home accepts temporary employment elsewhere. In this context, temporary employment means "the sort of employment in which termination within a short period could be foreseen." Albert v. Commissioner, 13 T.C. 129, 131 (1949).See also Norwood v. Commissioner, 66 T.C. 467, 470 (1976); McCallister v. Commissioner, 70 T.C. 505, 509 (1978); Kroll v. Commissioner, supra at 562. *294 The reason for not shifting the taxpayer's "tax home" to his temporary place of employment is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Kroll v. Commissioner, supra at 562. On the other hand, whenever termination of employment cannot be foreseen within a fixed or reasonably short period of time, the taxpayer's tax home shifts to such place of employment and he does not satisfy the "away from home" requirement. Sticker v. Commissioner, 54 T.C. 355, 361 (1970), affd. 438 F. 2d 1216 (6th Cir. 1971). Furthermore, if employment which was temporary in contemplation at the date of its commencement becomes indeterminate in duration, "the situs of such employment for purposes of the statute becomes the taxpayer's home." Kroll v. Commissioner, supra at 562. See also McCallister v. Commissioner, supra at 509. Bark v. Commissioner, 6 T.C. 851 854 (1946). Employment may change from temporary to indefinite "due to changed circumstances, *295 or simply by the passage of time." Norwood v. Commissioner, supra at 470. Each case in this heavily litigated area turns on its own facts. Commissioner v. Peurifoy, 254 F. 2d 483 (4th Cir. 1957), affd. per curiam 358 U.S. 59, 61 (1958); Norwood v. Commissioner, supra at 469-470. The Court of Appeals for the Ninth Circuit, to which an appeal of this case would lie, has applied a somewhat different test than this Court to determine whether a taxpayer's tax home has shifted to his present place of employment. In Harvey v. Commissioner, 283 F. 2d 491, 495 (9th Cir. 1960), revg. 32 T.C. 1368 (1959), the Ninth Circuit stated its test as follows: An employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station. What constitutes "a long period of time" varies with circumstances surrounding each case. See also Wright v. Hartsell, 305 F. 2d 221, 224 n. 1 (9th Cir. 1962). Both the test of this Court and the applied by the Ninth Circuit focus on the taxpayer's *296 expectation, in light of all the objective as to the length of his employment. On this record, applying either test we hold that Mr. Bride was not "away from home" within the meaning of section 162(a)(2). At trial, petitioners failed to introduce any evidence that there was not a reasonable probability known to Mr. Bride that he would be employed for a long period of time. To the contrary, the record indicates Mr. Bride expected lengthy employment at the Coronado plant. Mr. Bride began his employment at a time when the number of workers at the Coronado plant was increasing and, in fact, total employment at the plant did not peak until the middle of 1978. In addition, Mr. Bride enjoyed continuous employment at the Coronado plant for over 4 years and has not presented sufficient evidence that there was a real likelihood that he would be laid off by management. In fact, Mrs. Bride testified that her husband had frequently served as a foreman at the Coronado worksite. Such testimony clearly indicates that Bechtel valued Mr. Bride's services and would probably retain him in the event any layoffs were necessary. Moreover, the fact that Mr. Bride placed a downpayment on a trailer *297 lot in St. Johns, just one month after he began working there, suggests that he was not anticipating temporary employment. Finally, petitioner did not even testify [2] as to whether he expected his employment at the Coronado plant to be temporary. For the foregoing reasons, we conclude that petitioner's tax home during 1976 was in the vicinity of St. Johns, Arizona, and that his expenses for lodging, meals, and mileage while working at the Coronado plant are not deductible in excess of the amount allowed by respondent as "away from home" expenses under section 162(a)(2). Issue 2: Miscellaneous Deductions
On their 1976 return, petitioners claimed deductions of $ 800 for depreciation and $ 138.46 for automotive repairs, both with respect to the Mazda that his wife used in her Avon sales business. Petitioners also claimed certain rental expense deductions in connection with their Glen Canyon residence that they contend was converted into rental property in 1976. Respondent disallowed such depreciation and rental expense deductions *298 and partially disallowed the automotive expense deduction on the ground that petitioner failed to prove his entitlement to such deductions. For the reasons set forth below, we hold for respondent. Petitioners contend that the Mazda was used 50 percent of the 1976 tax year in Mrs. Bride's Glen Canyon Avon business, and claimed six months of depreciation on it even though Mrs. Bride left Glen Canyon in the fifth month of such year. Even if Mrs. %bride had lived in Glen Canyon for six months in 1976, a 50 percent depreciation deduction would be equivalent to claiming the Mazda was used 100 percent for business purposes during those six months. We do not believe the Mazda was used to such extent in Mrs. Bride's Avon business. Petitioners have the burden of proof. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Mrs. Bride's testimony on the depreciation issue was not only cryptic in parts, but was also inconsistent and incomplete. In addition, petitioners overstated the Mazda's cost on their 1976 return and improperly failed to subtract estimated salvage value when claiming straight line depreciation. See section *299 1.167(a)-1(b), Income Tax Regs. On this record, we are unable to conclude with any certainty the extent that Mrs. Bride used the Mazda in her Avon business. Consequently, we uphold the respondent's disallowance of petitioners' depreciation deduction. With respect to deductions for automotive (Mazda) expenses claimed by petitioners in connection with Mrs. Bride's sales business, we hold petitioners have not esablished that they are entitled to such deductions in excess of the amount allowed by respondent. Petitioners submitted 10 automobile repair bills, 7 of which have blanks where the customer's name should appear. Only 2 bills are identifiable as bills from a Mazda dealer and they add up to less than the deduction respondent has allowed. Furthermore, even if we agreed that every repair bill pertained to the Mazda, since Mrs. Bride did not sufficiently substantiate the times when she sold Avon, we could not determine which repairs were trade or business expenses. See section 162(a). Finally, we must determine whether certain expenses petitioners incurred prior to actually renting their Glen Canyon property are deductible. Petitioners contend that they converted their Glen *300 Canyon residence into "property held for the production of income" after they moved to St. Johns in 1976 and, therefore, expenses incurred with respect to such property are deductible under section 212. Respondent argues that petitioners did not prove that the Glen Canyon residence was converted into "property held for the production of income" in 1976. See sec. 212. We agree with respondent. This Court has held that a "variety of factors" must be considered to determine whether residential property has been converted to "property held for the production of income." Newcombe v. Commissioner, 54 T.C. 1298, 1299 (1970). Petitioners contend they engaged in various activities to improve and to rent their Glen Canyon residence; however, we are unable to conclude that any clear evidence was introduced as to when such property was converted for rental purposes in 1976. First, petitioners claim they published an advertisement listing the property for rent in May 1976. The advertisement, however, was never produced at trial. In fact, Mrs. Bride testified she never saw the advertisement but nevertheless proceeded to discuss what it "probably" stated. Second, petitioners *301 introduced checks which Mrs. Bride testified were payable to her relator. Nothing on the checks, however, indicates that they were made payable to a relator or any other business agent. While a notation on such checks mentioned "watering" or "rental watering," this hardly establishes when, or even if, the property was rented. Third, one of the bills petitioners introduced to substantive an allegedly deductible rental expense was completely blank where the customer's name should appear. Finally, the overall testimony of Mrs. Bride leaves us uncertain, in light of the questionable documentation offered, as to whether their Glen Canyon residence was converted to rental property in 1976. Accordingly, we hold petitioners are not entitled to the claimed rental expense deduction. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Petitioner did not even appear in Court on the date this case was heard. His wife testified that he was working in Las Vegas, Nevada.↩