WILLIAM HUGH BROOME AND ROBIN DALE BROOME, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Broome v. Commissioner
Docket Nos. 20716-82, 21182-82, 1113-83.
United States Tax Court
T.C. Memo 1985-321; 1985 Tax Ct. Memo LEXIS 315; 50 T.C.M. (CCH) 291; T.C.M. (RIA) 85321; July 1, 1985. *315 Held: Petitioners' employment as steamfitter welder assignees was indefinite and not temporary; traveling expenses were therefore not incurred while away from home and hence are not deductible under I.R.C. sec. 162(a)(2). William H. Boling, Jr., for the petitioners. Frank E. McDaniel, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined a deficiency in petitioners' Federal income tax for calendar tax years 1979 and 1980 as follows: Deficiency
Petitioner
1979
1980
Broome
$1,759.00
$1,587.00
Garrett
1,282.00
1,453.00
Pope
1,300.00
1,372.00
*316 At issue is the deductibility of travel expenses incurred by petitioners, who maintained primary residences in Georgia while employed as construction workers at the Bellefonte Nuclear Plant at Hollywood, Alabama. The narrow question is whether petitioners' employment was temporary or indefinite. If the former, then the expenses are deductible as traveling expenses incurred while away from home under section 162(a)(2); [2] if the latter, then they are nondeductible commuting expenses. FINDINGS OF FACT Some of the facts have been *317 stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners William Hugh Broome, John Lamar Garrett, Jr., and Bobby Lee Pope will hereinafter be referred to individually by surname or collectively as "petitioners." At the time the petition was filed, Broome and Garrett resided in Rome, Georgia, and Pope resided in Cedartown, Georgia. The Tennessee Valley Authority (hereinafter "TVA") hired petitioners as steamfitter welder "assignees" to work on construction of the Bellefonts Nuclear Plant (hereinafter "Bellefonte") at Hollywood, Alabama. The material dates regarding petitioners' employment are as follows: Petitioner
Hired
Member
Certified
Terminated
Garrett
2/14/78
11/16/81
12/8/81
N/A [3]
Pope
7/17/78
2/2/82
3/8/82
9/7/83
Broome
4/17/79
3/24/82
1/5/82
7/18/83
Garrett and Pope were employed under short term contracts which were later extended to the then (1978) customary "11-29" employment arrangement. The 11-29 arrangement was instituted by the TVA to facilitate *318 quick reduction of its hourly employee workforce should the need arise. This end was accomplished by hiring hourly workers for a temporary appointment not to exceed eleven months and twenty-nine days. Such an employee, retained for one year or less, could be laid off with only forty-eight hours notice. An employee with more than one year of continuous service could only be terminated by means of a reduction in force (hereinafter "RIF") which would require at least a thirty-day notice. The TVA discontinued use of the 11-29 agreements in October 1978 with the result that neither Garrett nor Pope encountered an interruption in employment due to the arrangement. The "assignee" status, under which petitioners were hired, was adopted because of the inability of local unions to meet the TVA's manpower demands for journeymen steamfitter welders. An assignee possesses the requisite skills and performs substantially the same duties as a journeyman steamfitter welder, but lacks the durational experience required to be certified. The Union-TVA agreement regarding assignees provided that an assignee would be terminated (1) before a non-assignee, and (2) when a journeyman welder became available. *319 Construction of the Bellefonte project began in 1974, at which time completion was projected for 1981. This forecast was revised in 1978 and 1979 to anticipated completion by 1983 and 1985, respectively. At the time of trial, completion was not expected before 1990. Manpower demand for steamfitter welders at Bellefonte was on the rise throughout 1978-1981, but supply was unable to keep pace. This dilemma was addressed by the utilization of steamfitter welder assignees; however, there remained a shortfall of qualified welders in 1978 and 1979. No RIFs or layoffs of steamfitter welder personnel (journeyman or assignee) were made during those years. Steamfitter welder personnel changes for 1978-1982 were as follows: Steamfitter Welder Assignees
Steamfitter Welders
Employed
Layoff or RIF
* Employed
* Layoff or RIF
Union
Non Union
Union
Non Union
1978
177
178
0
0
170
0
1979
133
55
0
0
106
0
1980
97
35
29
10
315
0
1981
47
3
28
57
244
0
1982
0
0
38
57
175
65
OPINION Petitioners contend that the claimed deductions are ordinary and necessary business *320 expenses incurred while away from home in pursuit of a trade or business, pursuant to section 162(a)(2). Respondent disallowed the deductions on the basis that petitioners were indefinitely (not temporarily) employed with the TVA at Bellefonte, the expenses therefore not having been incurred while away from home.The rationale is that because of the indefinite nature of their employment, petitioners' "tax home," i.e, their home for purposes of section 162(a), was the vicinity of their place of employment in Alabama and not their respective residences in Georgia. We agree. The "purpose of [section 162(a)(2)] is to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Kroll v. Commissioner,49 T.C. 557, 562 (1968), citing Verner v. Commissioner,39 T.C. 749 (1963), and James v. United States,308 F.2d 204 (9th Cir. 1962). However, deductibility of expenses under that section is predicated upon a showing by the taxpayer that such expenses were reasonable and necessary traveling expenses incurred while *321 "away from home" in pursuit of a trade or business. Commissioner v. Flowers,326 U.S. 465, 470 (1946). The burden of proof is upon the taxpayer. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). Determination of whether a taxpayer is away from home turns on whether his employment at the distant location is temporary or indefinite. See Peurifoy v. Commissioner,358 U.S. 59 (1958) (per curiam) and cases cited therein. If the former, then the taxpayer's tax home is his primary residence; if the latter, then his tax home, within the contemplation of section 162(a)(2), is the vicinity of his principal place of employment, not his distant abode. Kroll v. Commissioner,supra.
Whether petitioners' employment was temporary or indefinite is a question of fact. Schurer v. Commissioner,3 T.C. 544, 546 (1944), cited with approval in Peurifoy v. Commissioner,supra at 61. Thus, it is upon the taxpayer to demonstrate that under the circumstances he could not "reasonably have been expected to move his residence to the vicinity of his *322 employment." Tucker v. Commissioner,55 T.C. 783, 786 (1971). The rationale for this rule is that no deduction should be allowed where a taxpayer chooses for personal reasons to maintain a family residence distant from his principal place of employment, since the additional expense is incurred because of personal preferences and not as a result of business exigencies. Kroll v. Commissioner,surpa at 562. A taxpayer may discharge his burden of proof by showing that his employment is such that "termination within a short period could be foreseen." Albert v. Commissioner,13 T.C. 129, 131 (1949). Conversely, the taxpayer has failed to carry his burden if the evidence indicates that his employment was indefinite, i.e., "its termination [could not have been] foreseen within a fixed or reasonably short period of time." Stricker v. Commissioner,54 T.C. 355, 361 (1970), affd. 438 F.2d 1216 (6th Cir. 1971). Even if it is known that the employment will terminate within a fixed time, it is not temporary if it is expected to last for a substantial or indefinite period of time. Jones v. Commissioner,54 T.C. 734 (1970), *323 affd. 444 F.2d 508 (5th Cir. 1971); Norwood v. Commissioner,66 T.C. 467 (1976). See also, Kroll v. Commissioner,supra.
Petitioners have failed to prove that their employment was temporary and not indefinite. Petitioners have argued that their employment as construction workers lacked permanence since they would eventually "work themselves out of a job." However, petitioners need to show more than a tentative character of their employment; they must demonstrate a reasonable expectation that termination would occur within a short period of time. The evidence does not support such a conclusion. This Court has consistently held that the "11-29" employment arrangement (under which Garrett and Pope were hired) is not determinative of whether employment is temporary or indefinite.[4] The device was adopted by the TVA to facilitate compliance with administrative directives; because of established practive, those hired pursuant to it could routinely expect to be rehired after the temporary layoff. Of significance here is the fact that neither petitioner was laid off because of the provision, since the 11-29 arrangement was discontinued *324 before it could operate against them. Similarly, we have repeatedly concluded that the classification of an employee as "temporary" in an employment contract cannot alone determine the issue. Garlock v. Commissioner,34 T.C. 611, 616 (1960). Petitioners place emphasis upon their "assignee" and nonunion status during the years in issue, urging that they could be "bumped" by a journeyman (non-assignee) welder at any time and had less job security than a union worker. Petitioners argue that they had no way of knowing when their jobs would be terminated. But that is just the point: Petitioners' term of employment was indefinite. The test is not the uncertainty of continued employment; rather, it is the reasonable expectation of termination whthin a short time. The assignee status, by itself, is not determinative of the issue; more is required. [5] Circumstances surrounding such an employment arrangement must indicate that one hired under it could reasonably expect his employment to last no more than *325 a short period of time. Such was not the situation at Bellefonte during the years in issue. The TVA completion forecasts and the readily apparent stage of project completion could not support a conclusion that petitioners would be terminated within a short time. Such information was available to those in the position of petitioners through empirical observation or by inquiry of a foreman or supervisor.
The tabular summary, supra, of steamfitter welder personnel changes at Bellefonte indicates that manpower needs were at a peak during 1978-1980. Indeed, in 1978 and 1979 there were no layoffs or RIF's of any steamfitter welders, assignees or journeymen. During those same years, substantial numbers of assignees and journeymen steamfitter welders were hired. The first layoffs and RIF's occurred in 1980, but even then hiring of journeymen steamfitter welders trebled over the previous year and hiring of assignees continued at approximately 70 percent *326 of the 1979 level. It is noteworthy that the 39 assignee terminations in 1980 were made in the first two months of the year, yet 132 assignees and 315 journeymen steamfitter welders were hired that same year. Also of significance is the fact that 29 of the 39 assignees terminated were union members while only 10 were nonunion workers. Considered in the aggregate, the facts and circumstances do not support a conclusion that petitioners' employment at Bellefonte could reasonably have been expected, in 1979 or 1980, to terminate within a short time. On this issue, we hold for respondent. Accordingly, due to concessions by the parties on other issues, with regard to petitioners Broome and Pope, Decisions will be entered under Rule 155 in docket Nos. 20716-82 and 1113-83.
With regard to petitioner Garrett, Decision will be entered for respondent in docket No. 21182-82.
Footnotes
1. Cases of the following petitioners are consolidated herewith: John Lamar Garrett, Jr. and Kathleen De La Garza Garrett, docket No. 21182-82; Bobby Lee Pope and Elizabeth Ann Pope, docket No. 1113-83.↩
2. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as amended and in effect during the tax year or years in issue. Section 162(a)(2) provides: Sec. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *.↩
3. Garrett was still employed at the Bellefonte Nuclear Plant at the time of trial.↩
*. All were Union Members↩
4. See, e.g., Brown v. Commissioner,T.C. Memo. 1982-189; Baugher v. Commissioner,T.C. Memo. 1984-191↩, and cases cited therein.
5. We have previously held, under similar facts, that status as a steamfitter welder assignee did not compel a conclusion that the taxpayer's employment was temporary. Bates v. Commissioner,T.C. Memo. 1985-153↩.